WELLS v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division One, May 23, 1892.

1.  **Constitution:** PASSAGE OF LAWS: EXTRA SESSION OF LEGISLATURE: GOVERNOR'S PROCLAMATION. The constitution of Missouri declares that "the general assembly shall have no power, when convened in extra session by the governor, to act upon subjects other than those specially designated in the proclamation by which the session is called," etc. (Const. 1875, art. 4, sec. 55.) *Held,* that the "act to provide for the prevention of accidents to railroad employes, and others, by requiring that switches, frogs and guardrails be properly blocked" (Extra Session Acts, 1887, p. 14), is unconstitutional, the subject thereof not having been so designated by the governor.

2.  ———: ———: ———: ———. The constitutional provision above quoted *held,* mandatory.

3.  ———: ———: ———: ———. Subsequent approval of the act by the governor is not a valid substitute for his initiative, required by the constitution.

4.  **Judicial Notice:** ACTS OF GOVERNOR. Courts take judicial notice of official proclamations and messages of the executive.

5.  **Constitution:** STATUTE. No statute will be pronounced unconstitutional unless clearly so, and every reasonable intendment will be made to sustain it.

6.  ———: CONSTRUCTION. The meaning of section 14, article 12, constitution, 1875, discussed.

7.  ———: STATUTE. Where the constitution declares certain forms indispensable in the passage of laws, it is the duty of the courts to enforce it.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

PLAINTIFF sued for damages for personal injuries, and recovered judgment for $10,000, from which defendant appealed, after the usual preliminaries. .

The governor's special message of May 11, 1887, mentioned in the opinion of the court, was as follows:

"CITY OF JEFFERSON, May 11, 1887.

*"Gentlemen of the General Assembly:*

"A little less than twelve years ago, the people of . this state, by a popular vote, adopted a written constitution in which are stated in strong and clear language those principles which should guide and control the general assembly in its enactment of laws affecting railroads as public highways, and railroad companies as common carriers.

"The provisions of that instrument not only determine some things that the general assembly should not do in this regard, but they as clearly, and with more emphasis, declare some things it should do.

"There is no reason to believe that the people have ever been disposed to revoke the demands therein expressed; on the contrary, it is well known that they to-day are more unanimous and more earnest in such demands than they were twelve years ago.

"No good could come from a discussion by me of why such demands have not heretofore been met by the representatives of the people. It is sufficient for us to know that the condition of affairs which led to such demands still exists; that the people have the right to make such demands, and that, as a matter of fact, they do make them.

"What these demands are, which I think most urgently call for action by you, I have recently stated to you, gentlemen, in my biennial message.

"That the problems involved in the inquiry, 'how best to meet these demands?' are difficult of solution, is good reason why the very best powers you have should

be engaged in the work; but it is no reason why the solution should be longer delayed.

"That the properties involved or affected are of very great magnitude and of large value to our people, is good reason why the greatest caution should be observed that no injury is done to them; but it is also a better reason why such laws should be enacted as will make these properties of the very greatest possible value to the people, which they are not now, and will not become under the present laws.

"Just six months ago, the people, your constituents, said by their votes that they believed you were willing and able to meet their demands. By calling you thus together to consider these questions, I have, in the most conclusive manner, expressed my own opinion of the importance of the questions and my faith in your ability to enact the proper legislation.

"The opportunity for enacting such legislation is thus placed before you; the duty and the labor is yours, and yours alone.          JOHN S. MARMADUKE."

The biennial message of the governor, January 7, 1887, referred to in the foregoing special message, closed with this passage, under the heading, "Railroads:"

"I call your particular attention to the following sections of article 12 of our state constitution:

"Section 7, prohibiting corporations from engaging in 'other business than that expressly authorized in its charter;' also, section 8, fixing the conditions under which corporations may issue stock or bonds, and prohibiting all fictitious increase of stock; also, and very especially, section 14, which declares railways to be public highways, and the companies operating them common carriers; it also directs the general assembly to pass laws to correct abuses and to prevent unjust discrimination and extortion, and to fix maximum rates of charges and 'enforce all such laws by adequate

penalties;' also, section 17, which prohibits the consolidation of parallel or competing lines under one management; also, section 22, which prohibits the president and other officers of any railroad company being interested, directly or indirectly, in furnishing material or supplies to such company; also, section 24, which prohibits railroad and other transportation companies from granting free passes or tickets 'to members of the general assembly or members of the board of equalization, or any state or county or municipal officer.'

"I also deem worthy of your careful consideration what the railroad commissioners say on page 9 of their eleventh annual report about a remedy for the defect of our present law of rates.

"It is plainly and indisputably proper and right for the representatives of the people to provide the legislative enactments necessary or expedient to enforce and execute those laws and principles which the people themselves have enacted and declared in their constitution.                     JOHN S. MARMADUKE."

The other necessary facts appear in the opinion of the court.

*M. F. Watts* for appellant.

(1)   The act of 1887 is void for uncertainty, and is unconstitutional. *Railroad v. Dey*, 35 Fed. Rep. 866; Potter's Dwarris on Statutes [Ed. 1871] 99, 247; *United States v. Sharp*, 1 Peters' C. C. R. 118; Lieber's Hermeneutics (Hammond) 156; *In Re Schooner Enterprise*, 1 Payne's C. C. R. 32; *Ex parte Jackson*, 45 Ark. 158; *Fletcher v. Sondes*, 3 Bing. 586; *State ex rel. v. Miller*, 100 Mo. 446; *Hatfield v. Commonwealth*, 110 Pa. St. 395; *Church v. Detroit*, 31 N. W. Rep. 447; *Parish v. Railroad*, 63 Mo. 284; *Smith v. Haworth*, 53 Mo. 88.

VOL. 110—19

(2) The court erred in admitting evidence as to work done on the frog the day succeeding the accident. *Alcorn v. Railroad*, 108 Mo. 81; *Hipsley v. Railroad*, 88 Mo. 348; *Brennen v. St. Louis*, 92 Mo. 482; *State v. Meyer*, 99 Mo. 120; *Nalley v. Carpet Co.*, 51 Conn. 532; *Hodges v. Percival*, 132 Ill. 53; *Menard v. Railroad*, 150 Mass. 386; *Morse v. Railroad*, 30 Minn. 465; *Payne v. Railroad*, 9 Hun, 526; *Railroad v. Hennesey*, 75 Tex. 150. (3) The court erred in excluding the written contract of employment between respondent and appellant. (4) The court erred in giving the instruction asked by respondent. *Gurley v. Railroad*, 93 Mo. 733; *Ischer v. Bridge Co.*, 95 Mo. 261; *Birtwhistle v. Woodward*, 95 Mo. 113; *Spohn v. Railroad*, 87 Mo. 74; *Crain v. Railroad*, 87 Mo. 588; *Johnson v. Railroad*, 90 Mo. 340; *Sullivan v. Railroad*, 88 Mo. 169; *Bowen v. Railroad*, 95 Mo. 268; *Tabler v. Railroad*, 93 Mo. 79; *Gutridge v. Railroad*, 94 Mo. 468; *Townsley v. Railroad*, 89 Mo. 301; *Summerville v. Railroad*, 29 Mo. App. 48. (5) The court erred in refusing to give the instruction asked by appellant, that on all the evidence under the pleadings plaintiff could not recover. *Luckie v. Railroad*, 67 Mo. 245; *Nall v. Railroad*, 97 Mo. 68; *Duncan v. Fisher*, 18 Mo. 404; *Irwin v. Chiles*, 28 Mo. 576; *Harris v. Railroad*, 37 Mo. 308; *Reed v. Bott*, 100 Mo. 62; *Ischer v. Bridge Co.*, 95 Mo. 261. See also authorities cited under point 4. (6) The court erred in refusing to give the first instruction asked by appellant. (7) The court erred in refusing to give the second instruction asked by appellant. See authorities cited under points 4 and 5. *Railroad v. Davis*, 15 S. W. Rep. 895; *Wood v. Lock*, 147 Mass. 604; *Leary v. Railroad*, 139 Mass. 580; *Taylor v. Mfg. Co.*, 140 Mass. 150. (8) The court erred in refusing to give the third, fourth and fifth instructions asked by the appellant. (9) The court

erred in refusing to give the seventh and eighth instructions asked by appellant.

*A. R. Taylor* and *J. P. Maginn* for respondent.

(1) The act of 1887 is valid and is constitutional. *Ewing v. Hoblitzelle*, 85 Mo. 64; *Phillips v. Railroad*, 86 Mo. 78; *State ex rel. v. Ransom*, 75 Mo. 78; *Wilson v. Railroad*, 60 Mo. 184; *State v. Bennett*, 102 Mo. 356; *State ex rel. v. County Court*, 102 Mo. 531; *Manz v. Railroad*, 87 Mo. 278; *Hannibal v. Marion Co.*, 67 Mo. 571; *State v. Brassfield*, 81 Mo. 151. (2) The court did not err in admitting evidence as to putting in of blocks in the frog the day succeeding the accident; but if it did err such error was cured by the appellant putting in the same evidence, in its own case. *Alcorn v. Railroad*, 108 Mo. 81. (3) The court properly excluded the written contract of employment between respondent and appellant. (4) The court did not err in giving the instruction asked by respondent. (5) The court properly refused the sixth instruction asked by appellant. (6) The court properly refused the first instruction asked by appellant. (7) The court properly refused the second and third instructions asked by appellant. (8) The court properly refused the fourth, fifth and sixth instructions asked by appellant. (9) The court properly refused the eighth and ninth instructions asked by appellant.

BARCLAY, J.—Plaintiff's action is predicated on a charge of negligence, in that defendant omitted to keep its track in a reasonably safe condition. The specific allegation is that defendant failed to "block" a certain "frog," forming part of the track, in consequence of which plaintiff's foot was caught therein and became fastened, and his injury ensued, while he was uncoupling cars in the discharge of duty as switch-man for defendant, August 2, 1888, at St. Louis.

At the trial, plaintiff relied upon the terms of *"an act* to provide for the prevention of accidents to railroad employes and others, by requiring that switches, frogs and guardrails be properly blocked," approved, June 16, 1887. Extra Sess. Acts, 1887, p. 14. The instructions and other proceedings in the circuit court disclose that the case was conducted throughout on the theory that the "act" in question imposed upon defendant the duties stated in it.

Exceptions were saved to these instructions and to other rulings applying that theory.

The defendant's position is that that legislation is invalid, because in violation of the constitution of Missouri.

I. The "act" was passed in 1887, at the special or extra session of the legislature, convened by the governor under the following provision of the organic law, viz.:

"On extraordinary occasions he may convene the general assembly by proclamation, wherein he shall state specifically each matter concerning which the action of that body is deemed necessary." Const. 1875, art. 5, sec. 9.

It is further declared by section 55 of the fourth article of the same instrument that "the general assembly shall have no power, when convened in extra session by the governor, to act upon subjects other than those specially designated in the proclamation, by which the session is called, or recommended by special message to its consideration by the governor after it shall have been convened."

The governor's proclamation of March 25, 1887, stated the matters for action at the extra session thus:

"To provide the legislative enactments necessary or expedient to enforce and execute those laws and

principles, with reference to railways and railroad companies, which the people themselves have enacted and declared in their constitution. To make appropriation for the expenses of this extra session of the general assembly." House Journal, Extra Sess. 1887, p. 3.

When the legislature met, May 11, 1887, the governor communicated a special message repeating substantially the program indicated in his proclamation, and referring in that connection, specially, to his biennial message of January 7, 1887.

In the biennial message we find definite specifications of subjects for legislation concerning railroads. The language in which those recommendations appear is quoted in the statement accompanying this opinion. By comparing its closing passages with the terms of the proclamation and special message, it becomes very plain that the governor designed to submit for legislative consideration the same matters particularly pointed out in those recommendations.

It will be assumed (though this appeal does not require us to decide) that the subjects thus identified were "specifically designated," within the meaning of the constitution.

For the purpose of ascertaining, as in the case at bar, whether the legislative power has been properly set in motion within the limitations of the constitution, judicial notice will be taken of such official proclamations and messages as have been mentioned, issued in the exercise of the constitutional authority of the executive.

This rule of evidence is now too firmly settled to require argument for its support.

Let us now examine the act of June 16, 1887, "to provide for the prevention of accidents to railroad employes and others, by requiring that switches, frogs and guardrails be properly blocked."

By its first section it is declared that "all companies or corporations, lessees or other persons owning or operating any railroad or part of railroad in this state are hereby required, on or before the first day of November, eighteen hundred and eighty-seven (1887), to adopt and put in use the best known appliances or inventions to fill or block all switches, frogs and guard-rails on their roads in all yards, divisional and terminal stations, and, where trains are made up, to prevent, as far as possible, the feet of employes or other persons from being caught therein."

The second and last section declares, in substance, that in suits for damages, growing out of non-compliance with the first section, contributory negligence of the injured party shall not relieve defendant from liability.

Does such a piece of legislation come within the limits of any of the subjects designated by the governor?

In meeting this question we acknowledge the force of the rule that no enactment of the general assembly will be pronounced unconstitutional unless very clearly so, and that every fair and reasonable intendment should be made to sustain it; but, on the other hand, our duty to declare, when necessary, the supremacy of the fundamental law forbids the nullification of any of its terms under the guise of construction.

All the points in the governor's message are directed toward legislation on topics mentioned in article 12 of the constitution of 1875. Sections 7, 8, 17, 22 and 24 of that article, as well as the reference to a defect in the law of railroad rates, may be dismissed from the present discussion with the remark that by no possibility can the "act" before us be regarded as falling within their scope. This leaves section 14 to consider. Its terms are these:

"Railways heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and railroad companies, common carriers. The general assembly shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and shall from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on said railroads, and enforce all such laws by adequate penalties."

The words, "to correct abuses," as here employed, evidently refer to abuses having some relation to the freight or passenger tariffs of railroads as public highways and common carriers. The context indicates that.

No reasonable interpretation of the language of that section would suggest any constitutional command for legislation of the kind now under review.

This "act," it will be observed, imposes a duty to block "all switches, frogs," etc, not only upon railway companies, but upon all kinds of corporations, "or other persons," owning any part of a railroad. It would reach the case of every private citizen, owning a small track for his own convenience, as well as the great railroad lines of Missouri. It is a stringent exercise of police power.

The effect of the second section is to introduce a radical innovation in procedure by the attempted elimination of contributory negligence as a defense, by way of penalty for violation of the "act" in cases to which it might apply. But it has no fair relevancy, that we can discover, to the subject of freight or passenger tariffs, or to abuses of corporate power by railways in the respects alluded to in section 14, article 12, of the constitution.

We conclude that the "act" does not fall within range of the subjects submitted to the assembly for action by the governor in his proclamation and messages.

Is it, therefore, to be pronounced void? That depends on the legal energy to be ascribed to those parts of the constitution first above quoted. In them, as in some other portions of that document, the people have seen fit, for satisfactory reasons, to place limitations upon the full use of legislative power. They have commanded, in the most solemn manner, an observance of certain forms in the process of legislation, because (we may assume) they were led by experience to believe those forms conducive to better results than had been otherwise attained.

It is not for us to question the reasons of that policy or to construe the life out of their deliberate act. When they have said, as in the language before us, that "the general assembly shall have no power * * * in extra session * * * to act upon subjects other than those specially designated," etc., it is our duty to give effect to that statement. To hold that such language is merely directory would amount, in substance, to amending the instrument so as to import that the assembly should have no such power unless it assumed that power. Such a reading, we conceive, would reduce the command to a dead letter and virtually eliminate it. It is a reading we do not feel at liberty to adopt, however great the respect we entertain for the legislature.

The power of construing the constitution must necessarily be lodged in some department of government to insure that practical sanction of its mandates which is essential to preserve their vitality and force. This delicate and sacred trust is devolved upon the judiciary as a manifestation of the political principle

that ours is a government of laws rather than of men. In exercising that power the courts should take a large and comprehensive view of constitutional language, mindful that "every scripture is to be interpreted by the same spirit which gave it forth," and with a deep desire to enforce its full and exact meaning. Thus viewing the very definite provision before us we cannot regard it otherwise than as mandatory.

When the people have declared a certain form indispensable to the proper expression of their will, it is no part of our function to adjudge that form unnecessary or immaterial. On the contrary, our bounden duty is to enforce that declaration.

It follows that the "act" in question cannot be sustained as a constitutional exertion of the law-making power.

That position being reached, it is unimportant that the governor, by his formal signature, in due course, approved the bill after its passage by the general assembly.

By the terms of the constitution the legislative· power to act in the premises depended on the governor's taking the initiative, by a proclamation or a message. His subsequent approval cannot be accepted as a substitute for these earlier steps which the fundamental law prescribes. *Davidson v. Moorman* (1871), 2 Heisk. 575; *St. Louis v. Withaus* (1886), 90 Mo. 646.

II. However, the plaintiff's case, as outlined in the petition, may be maintainable upon principles of general law without aid from the "act" above discussed. Compare *Alcorn's case* (1891), 108 Mo 18, and *Hamilton's case* (1892), 108 Mo. 364. If so, plaintiff is entitled to a trial upon that theory; but the results of the former hearing, predicated on the act of 1887, must be set aside.

The judgment is reversed and the cause remanded. Chief Justice SHERWOOD and BLACK and BRACE, JJ., concur.