## SIMS *v.* WELDON.

### Opinion delivered June 16, 1924.

1. STATUTES—BUSINESS TRANSACTED DURING EXTRA SESSION.—Const., art. 6, § 19, declaring what business may be transacted during an extra session of the Legislature, is mandatory, and a statute enacted at such a session not in conformity to the constitutional provision is void.

2. CONSTITUTIONAL LAW—VALIDITY OF STATUTE—JUDICIAL QUESTION. —Whether a statute enacted at an extra session of the Legislature is within the purpose specified by the Governor, as required by Const., art. 6, § 19, is a judicial question.

3. STATUTES—VALIDITY OF ACT OF EXTRA SESSION.—Legislators convened in extraordinary session may act freely within the Governor's call and legislate on any or all of the subjects specified, or any part thereof, and every presumption will be made in favor of the regularity of their action, but when it appears that the statute does not fall within the purposes specified it is the court's duty to declare it void.

4. STATUTES—SPECIAL SESSION—GOVERNOR'S CALL.—Const., art. 6, § 19, requiring the Governor, in calling a special session of the Legislature, to specify the purpose for which they are convened, requires the Governor to confine legislation to particular subjects, but not to restrict the details springing out of such subjects.

5. STATUTES—EXTRA SESSION OF LEGISLATURE—SCOPE OF GOVERNOR'S CALL.—Under the Governor's proclamation calling the Legislature in special session to enact laws imposing "a tax on net incomes," a law imposing a tax on cigars and cigarettes was not authorized.

6. STATUTES—ACT OF EXTRA SESSION—VALIDITY.—Where the Governor's proclamation called a special session of the Legislature to enact a tax on net incomes, an act passed at such session imposing a tax on cigars and cigarettes will not be upheld, though the purpose of the Governor and of the act passed was to raise funds for school purposes.

7. EVIDENCE—GOVERNOR'S SUPPLEMENTAL PROCLAMATION.—The court takes judicial notice of a supplemental call by the Governor during the extra session of the Legislature, specifying additional subjects of legislation.

8. STATUTES—SUPPLEMENTAL PROCLAMATION OF GOVERNOR.—After an extra session of the Legislature has convened, pursuant to the Governor's call, he cannot issue a supplemental proclamation specifying additional subjects of legislation.

9. EVIDENCE—JUDICIAL NOTICE OF LEGISLATIVE RECORDS.—The court takes judicial notice of the contents of the records of the Legislature, and hence knows that the Legislature did not extend the

extra session of 1924 to take up other legislation than that specified in the Governor's proclamation.

10. STATUTES—EXTENSION OF SPECIAL SESSION.—Mere enactment of a bill at a special session of the Legislature, not within the scope of the Governor's call, is not tantamount to an extension of the session for the purpose of passing such act, even though it was passed by a two-thirds vote in both houses.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. S. Utley* Attorney General, *John L. Carter, Wm. T. Hammock, Darden Moose,* and *J. S. Abercrombie,* Assistants, for appellant.

The Legislature is primarily the judge as to whether or not an act falls within the scope of an executive proclamation. 147 Ark. 453. It is true that in this case the Governor designated the enactment of an income tax law; but the method of providing the needed revenue was a question of legislative policy peculiarly within the sphere and jurisdiction of the General Assembly. The detail of providing such revenue relates back to the emergency which made the extraordinary session necessary, viz: the extreme financial needs of the public schools of the State; and, though the bill enacted may not be in the form prescribed, yet, if it meets the emergency which prompted the call, it is within the proclamation—especially when approved by the Governor as responsive to his call. 154 Ark. 295-6. On the question of the power of the Legislature in special session, see 154 Ark. 551, at page 559. In passing upon the contention raised by appellee that the Governor's proclamation does not bring itself within the requirements of art. 6, § 19, of the Constitution, because not broad enough to amount to stating the subject-matter upon which the lawmakers could act, and because the act in question was not specified in the proclamation, we think the court is justified in taking into consideration the public notoriety of the emergency, the extreme financial distress of the public schools, which made the calling of the Legislature into extraordinary session necessary. Taking the history of the call

into consideration, the Governor's proclamation was broad enough to justify construing it as stating the subject of legislation to be for school revenue, and as authorizing the Legislature to pass the bill in question. The same principle employed in interpreting a provision of the Constitution ought to be employed in interpreting the meaning of a proclamation by the Governor in calling an extra session. 105 Ark. 380; 85 Ark. 89.

*Cockrill & Armistead,* for appellee.

The act is not within the purview of the Governor's proclamation, and is therefore void. It is the mandatory duty of the court to go behind the act to the proclamation in order to determine whether the act is within the purview of the proclamation. 154 Ark. 288. A reading of the act and of the specifications contained in the Governor's proclamation, together with the opinion of the court in 154 Ark. 288, just cited, sustain the decree of the chancery court without further argument; but the question raised by this appeal involves more than whether this particular act shall stand. It brings into issue a vital principle of constitutional law. The evils of numerous special sessions of the Legislature are great enough, even with art. 6, § 19, of the Constitution relating to extraordinary sessions enforced and applied. The thought embodied in the Constitution as expressed in art. 5, §§ 5 and 16, and by Amendment No. 8, is that once in two years is sufficient for the meetings of the General Assembly authorized to pass general measures without limitations, and in order to guard against excess legislation the terms of the general sessions are limited; but, realizing that emergencies might arise requiring legislation between the general sessions, this § 19 of article 6 was brought in. The object and purpose of the limitation upon the power of the General Assembly, assembled upon the call of the Governor upon extraordinary occasions, is to check excess legislation, and to render laws a little more stable by furnishing a period of two years, during which they may be to some degree subjected to the test of a brief experiment. 115 Pac.

(Colo.) 696-698; 161 'S. W. (Tenn.) 1006; 207 Pac. (Ariz.) 611, 613. The validity of an act passed at a called session depends therefore upon whether its subject-matter is within the purview of the specifications contained in the proclamation; if not, it is void. An excise tax on cigarettes and cigars does not come within the purview of a call for the passage of a net income law. In 154 Ark. 288, *supra,* it was held that the approval of the act by the Governor did not supply the lack of authorization for its enactment in the proclamation. That proposition is also supported by the following cases: 19 S. W. (Mo.) 530; 34 S. W. (Tex.) 769; 2 Heisk. (Tenn.) 759; 90 Mo. 646; 107 S. E. (Ga.) 765; 77 Ill. 127; 110 Mo. 286; 127 S. W. 208. An excise tax or a license tax upon those engaged in particular occupations, though graded in accordance with income, is a tax on the occupations, and is not an income tax. 26 R. C. L., "Taxation," § 116; 23 Grat. (Va.) 464; 28 L. R. A. 110; 82 S. E. (Va.) 695; Black on Income Taxes, § 3; 47 N. W. (Neb.) 280; 93 S. W. (Tex.) 436, 453.

*Rowell & Alexander* filed a brief on behalf of appellee, as *amici curiae.*

McCulloch, C. J. Appellee is engaged in the business of retailing cigarettes and cigars in the city of Little Rock, and he instituted this action attacking the validity of the statute passed at the recent extraordinary session of the General Assembly attempting to levy a tax on the sale of cigarettes and cigars—two dollars per thousand on cigarettes and ten per centum on the price of cigars sold in the State by retail dealers. The ground on which the validity of the statute is assailed is that the constitutional requirements were not complied with. No attack is made upon the form or substance of the statute itself or upon the authority of the Legislature to pass such a statute under circumstances which would meet the requirements of the Constitution.

The first question raised is whether or not the statute falls within the purposes specified by the Governor in his proclamation calling the extraordinary session.

The Constitution of 1874 contains the following provision with respect to extraordinary sessions of the General Assembly:

"The Governor may, by proclamation, on extraordinary occasions convene the General Assembly at the seat of government, or at a different place, if that shall have become, since their last adjournment, dangerous from an enemy or contagious disease; and he shall specify in his proclamation the purpose for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days." Article 6, § 19.

The amendment adopted in the year 1913 (Amendment No. 8) makes no change in the section quoted above which has any bearing on the present controversy. The only change related to compensation of members of the Legislature, and provided that, when convened in extraordinary session, they shall receive three dollars per day for their services the first fifteen days, and that, if the session shall extend beyond fifteen days, they shall receive no further *per diem.*

The proclamation of the Governor was made on March 8, 1924, calling the session to begin on March 24, 1924, and reads as follows:

"State of Arkansas, Executive Department.
"PROCLAMATION.

"To all to whom these presents shall come — Greetings:

"Know ye that, whereas, by virtue of power and authority vested in me by § 19 of article 6 of the Constitution of the said State, I do, by these presents, call a special session of the General Assembly of the said State to meet and convene at Little Rock, the seat of government, in the State Capitol, at the hour of twelve o'clock noon, on the 24th day of March, 1924, and I specify the purposes for which the General Assembly is convened to be as follows, to-wit:

"1.   To enact a law imposing a tax on net incomes for the calendar year 1924, and each year thereafter, of individuals and corporations resident in this State or having a business or agency herein.

"2.   To take such action as is deemed proper in regards the collection of the tax imposed by act 345 of 1923, the gross income tax law.

"3.   To amend the severance tax act 118 of 1923 with reference to the tax on bauxite.

"4.   To make all appropriations necessary for the expenses of this session and to carry out the purposes and provisions of any laws enacted thereat."

Our decision in the case of *Jones* v. *State,* 154 Ark. 288, is of much force in the present controversy, and is conclusive of some of the questions raised.   In the first place, it was decided there that the constitutional provision now under consideration is mandatory, and that a statute enacted at an extraordinary session, not in conformity with the requirements of this provision, is void. It was also decided that the question whether or not a statute enacted at an extraordinary session falls within the purposes specified by the Governor is a judicial one, to be determined by the court ascertaining the validity or invalidity of the statute.   Authorities supporting that view of the law were cited in the opinion.   The rule announced in that case is that the lawmakers, when convened in extraordinary session, "may act freely within the call; may legislate upon all or any of the subjects specified, or upon any part of a subject; and every presumption will be made in favor of the regularity of its action," but that, when it appears to the court that the statute does not fall within the purposes specified, it is the duty of the court to declare the statute invalid.   The statute under consideration in that case was declared invalid for the reason that it was not within the proclamation of the Governor.   We feel constrained to add our approval to the statement of the law made in the dissenting opinion in that case, that the provision of the Constitution in question merely requires the Governor

"to confine legislation to particular subjects, and not to restrict the details springing out of the subjects enumerated in the call." In other words, the Governor must determine whether or not an emergency exists for calling a session of the Legislature, and then must specify the purposes of the legislation thought to be necessary to relieve the emergency, and such legislation must be confined to the general purposes specified in the proclamation. Much latitude is allowed for the specification by the Governor in his proclamation, but the purposes of legislation must be definitely specified, either broadly or in detail. That responsibility cannot be avoided by the executive, for the Legislature cannot be called together without a specification of the purposes of legislation to be considered.

Now, in the proclamation before us for consideration, the Governor merely specified the enactment of "a law imposing a tax on net incomes." It is thus seen that the scope of the legislation is the enactment of "a law imposing a tax on net incomes," and the passage of a law of a wholly different character does not fall within that specification. It is too obvious for controversy that an excise tax on the sales of merchandise of any kind is not "a tax on net incomes." Such a law has none of the elements of an income tax, and, on the contrary, the mere statement of the two characters of statutes shows their dissimilarity. A sales tax is the antithesis of an income tax, for the former may be, and generally is, added to the price and thus passed on to the purchaser, whilst the latter must be paid by the one who earns the income, and it cannot be passed on to another. If it were merely stated in the call, as one of the purposes of the session, that a law should be passed raising additional revenue for a given purpose, then the Legislature could adopt its own method in prescribing by statute the kind of tax to be adopted. But, in the present case, there is no designation of the ultimate purpose for which the tax is to be levied, and the sole guide in determining the purpose of the legislation is that it shall be an income tax—

there are no other words of definition found in the call. Therefore we are concluded, we think, in determining the validity of the statute, by the fact that the Governor called the session for the purpose of passing an income tax law, and that this law does not fall within that class.

It is contended, however, that, while the proclamation does not mention the purposes to which the revenue to be raised must be devoted, we can look to the "history of the times" to ascertain that the purpose was to raise additional revenue for school purposes; that certain public acts and declarations made by the Governor, in public addresses and newspaper interviews, mass meetings held, and the appointment of committees, show that there was a great public campaign made for the purpose of raising money for educational purposes, and that we can take notice of the fact that this movement prompted the Governor to call the extraordinary session of the Legislature, and that, when we thus view the situation, we should determine that the ultimate purpose of the tax was that it was to be used for school purposes. The Governor specified, presumably, all that was in his mind at the time he issued the proclamation, and we are not at liberty to go back of that call to determine what the purpose of the taxation was intended for. The call was to pass an income tax law, and the passage of such a law, regardless of the appropriation made of the revenues thus raised, would have been within the call, but any other kind of tax, regardless of the appropriation to any given use, was not within the call. The mental attitude of the Governor as to his intention, not expressed in the proclamation, does not supply the specifications required by the Constitution.

It is also argued that the fact that the Governor, in two other sections of the proclamation, referred to other statutes which we judicially know were statutes raising revenue for school purposes, is sufficient to constitute the proclamation a designation of the raising of revenue for school purposes to be the design of the call. We cannot agree to that view, for the second section of the

Governor's call merely designated legislation ''in regards the collection of the tax imposed by act 345 of 1923, the gross income tax law;'' and the third section merely related to an amendment to the severance tax.law with reference to the tax on bauxite.  These are references to particular statutes which relate to the raising of revenue for school purposes, and the only effect of these two specifications is to authorize the amendment or repeal of the gross income tax law, and the amendment of the law taxing bauxite.  Neither of these sections call for the enactment of a sales tax for school purposes or for any other purpose.  Our conclusion is therefore that the statute under consideration does not come within the specifications of the Governor's call.

Counsel for the State, in defending the validity of the statute, do not rely on any other ground except that the statute comes within the specifications of the Governor's call, but there are other questions which necessarily raise themselves and call for a decision in determining whether or not this statute was legally enacted.

It appears from the record in this case that the Governor issued a supplemental call—and we take notice of it, even without it being in the record—during the extraordinary session, and that this supplemental call specified the passage of ''a kind of a revenue law'' for school purposes.  The bill for the enactment of this statute was introduced in the Senate on March 28, 1924, and finally passed the Senate on March 31, and was then sent to the House of Representatives.  It was read the first time in the House on April 2, and was read the third time and passed on April 3.  The proclamation of the Governor was made on April 2, after the bill had passed the Senate and was pending in the House.  We deem it unnecessary to discuss the question whether or not the passage of the bill in the Senate, prior to the supplemental call authorizing the passage of such a bill, would render it invalid, for we are of the opinion that the Governor had no authority at that time to issue such a proclamation.  The only authority of the Governor found in

the language of the Constitution is that he may, by proclamation, "convene the General Assembly," and that "he shall specify in his proclamation the purpose for which they are convened." This is the scope and extent of his power, and he has no further control over legislation except to approve or disapprove the bills finally passed by both houses.

The question whether the Governor may, before the meeting of the session, amend his call, is not presented in the present controversy, and we expressly refrain from passing upon that question, but we do hold that, after the session has begun, pursuant to the call of the executive, the power of the executive over that particular session has been exhausted. He may call another session, but he has no authority to interfere with the proceedings of the session then progressing by directing the further course of legislation. When the session begins, the lawmakers themselves are, under the Constitution, in complete control of the situation, subject, of course, to the prescribed restrictions that "no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days." The Legislature in extraordinary session determines for itself the extent to which it will enact legislation specified in the call, and, when that is determined, the Legislature may extend the session and take up other legislation.

Under the Constitution there is no other way for the General Assembly to consider and transact business outside of the specifications of the Governor's call, except by providing by a two-thirds vote for an extension of the session after the completion of the business specified in the proclamation. In the Constitutions of Mississippi, Missouri, Montana, Oklahoma, Nevada and Utah, and perhaps in some of the other States of the Union, there is an express provision authorizing the Governor, during an extraordinary session, to specify, from time to time,

additional matters to be considered, and in those States, of course, it is the practice to exercise that authority, and legislation enacted pursuant to it has been upheld. But it will be noted that our Constitution contains no such provision; on the contrary, it limits the authority, as we have already seen, to a proclamation convening the session and specifying the purposes for which the session is convened. If the Governor could, by repeated or supplemental specifications during the session, prolong it indefinitely, he could thereby deprive the Legislature of its constitutional power of remaining in session for general legislation. It seems clear to us that it was not the intention of the framers of the Constitution to confer any such power on the Governor. The language used does not justify it, but, on the contrary, it is against any such view. The Constitution prescribes an orderly method for calling into existence an extraordinary session, distributing the powers between the Governor and the Legislature, and neither can encroach upon the powers of the other.

The further question arises whether we should indulge the presumption that the Legislature extended the session for the purpose of taking up other legislation, or that the passage of this bill was tantamount to an extension of the session for that purpose. The first answer to this suggestion is that we take judicial notice of the contents of the records of the General Assembly, and we know that there was no formal extension of the session, therefore no presumption can be indulged in that respect. The enactment of this bill cannot be treated as tantamount to an extension of the session for the purpose of its enactment. This is so for more than one reason. The Constitution requires that an extension must be "by a vote of two-thirds of all members elected to both houses, entered upon their journals." This bill received two-thirds of the vote in the House, but did not receive two-thirds of the vote in the Senate. Moreover, it is clear to us that the mere enactment of a bill not within the call, even by a two-thirds vote, is not tanta-

mount to an extension of the session for the purpose of passing the bill. The language of the Constitution is clear and unmistakable. It means that, when the business within the call is completed, then there may be an extension of the session, otherwise the session comes to an end by operation of the force of the constitutional provision. The Legislature must, of course, determine for itself when it has concluded the consideration of business mentioned in the call. It may do so by either passing or rejecting the bills providing for legislation within the call, or it may determine, by formal resolution, that it has completed its consideration of the business embraced in the call, and then determine whether or not there shall be an extension of the session for other business, and this must be done by a two-thirds vote. In this instance there is nothing on the journal of the House to show that, after the completion of the business in the call, there was an extension of the session.

In the Jones case, *supra,* we said:

"Inasmuch as the session of the General Assembly was not extended by the vote of two houses after the completion of the business embraced in the Governor's call, the act under review must fall as having been passed without constitutional authority, unless authorization for its enactment is found in the Governor's proclamation."

The Constitution was intended to mark a clear and definite line between the business embraced in the call and the consideration of other business. There is a positive command that no other business shall be taken up until that has been disposed of, and then there may be an extension of the session, if, by a vote of two-thirds of all the members elected to both houses, and entered on the journals, such an extension shall be decided upon. In no other way can the Legislature take up further legislation.

Our conclusion therefore is that, in no view of the matter, has this piece of legislation been legally enacted, and the chancery court was correct in so deciding.

The decree is affirmed.

### DISSENTING OPINION.

HART, J.   In *Jones* v. *State,* 154 Ark. 288, it was held that a constitutional provision that an extra session of the Legislature shall have no power to act upon subjects other than those specially designated in the proclamation by which the session is called is mandatory, and that a statute passed at such session upon a subject not thus specially designated is unconstitutional.

Judge HUMPHREYS and myself have no quarrel with the declarations of law laid down in this opinion, but we believe that a review of the cases cited by the text-writers quoted from in that opinion shows that the court has narrowed the rule there announced in applying it to the facts in the case at bar.   In that case this court was construing art. 6, § 19, of the Constitution, which provides that the Governor may, by proclamation, call a special session of the General Assembly, and that he shall specify in his proclamation the purpose for which they are convened, and that no business other than that set forth therein shall be transacted until the same shall have been disposed of.   In construing the section the court held that judicial notice will be taken of legislative records.

It is also a cardinal principle of constitutional construction that the Constitution must be considered as a whole, and, to get at the meaning of any part of it, we must read it in the light of other provisions relating to the same subject.   *Little Rock* v. *North Little Rock,* 72 Ark. 195.

Article 6, § 8, provides that the Governor shall give to the General Assembly from time to time information by message concerning the condition and government of the State, and recommend for their consideration such measures as he may deem expedient. This section of the Constitution makes the Governor's message a public document, and it becomes part of the journals of the Legislature.   It is as much a part of the legislative records as the Governor's proclamation calling the Legislature in extra session.

This court has expressly held that the proclamation of the Governor calling an extraordinary session of the General Assembly is a record of which the courts take judicial notice. *Booe* v. *Road Improvement Dist. No. 4 of Prairie County*, 141 Ark. 140, and *Jones* v. *State*, 154 Ark. 278.

Other courts have held, under a constitutional provision confining such legislation to business specially named in the proclamation, that the message may be looked to to determine the construction put by the Governor on the scope of the proclamation. *Parsons* v. *People* (Col.), 76 Pac. 666, and cases cited, and *State* v. *Rawlings*, 232 Mo. 544, 134 S. W. 530.

The substance of the Governor's proclamation in the case at bar is as follows:

"1.  To enact a law imposing a tax on net incomes for the calendar year 1924, and each year thereafter, of individuals and corporations resident in this State or having a business or agency therein.

"2.  To take such action as is deemed proper in regard to collection of the tax imposed by act 345 of 1923, the gross income tax law.

"3.  To amend the severance tax act 118 of 1923, with reference to the tax on bauxite.

"4.  To make all appropriations necessary for the expenses of this session and to carry out the purposes and provisions of any laws enacted thereat."

In this connection we copy from the Governor's special message which was delivered upon the convening of the Legislature in special session.  The first sentence is as follows:

"The financial distress of the public schools of the State has impelled me to convene you for the purpose of considering and passing laws for relief."

We copy other portions of his message as follows:

"The people have voted all the tax they could.  The directors, desiring to keep the schools open as long as possible, have borrowed all the money they could.  Some of you may be surprised to know that the school districts

of this State now have outstanding bonds aggregating $9,000,000 for buildings, many of which are now inadequate. And, in addition, have a floating indebtedness of $2,000,000 for current expenses. Schools cannot run long on a credit. They should never be run on a credit. Some of them have reached the limit of their credit and have closed their schools; others will have to close for want of funds. Some are shortening the term, some are supplementing the public funds with private donations, and some are charging tuition, and the boys and girls of poor parentage who cannot pay for their tuition must quit school. And this in a State whose Constitution requires that the State shall ever maintain an efficient system of free schools for all her children.''

The Governor concludes the message with the plea that every child shall have an equal chance for a common-school education. The message is too long to insert herein, but it contains no subject whatever except a plea to pass a bill to raise revenue for the support of the common schools.

Now we do not think that a special message can contradict or vary the subject or subjects enumerated in the Governor's call, but it can be used in connection with the proclamation and as explanatory of it to ascertain the purpose of the call.

The proclamation advises the Legislature to take such action as is deemed proper in regard to the collection of the tax imposed by act 345 of 1923. This was an income tax act passed for the sole purpose of raising revenue for the public schools of the State. The severance tax act of 1923 referred to in the proclamation provides that the proceeds derived from it shall be wholly dedicated to the common schools of the State.

Thus we see that the special message, instead of attempting to vary or add to the subject embraced in the proclamation, strictly confines it within the limits of the subject or the purpose mentioned in the proclamation. While the Governor has the power under the Constitution to limit the subjects which the Legislature may con-

sider at a special session, and, in order to do this, he may define the subjects according to his conception of his public duty, still he cannot, under the guise of a definition, impose his will upon the Legislature as to the specific law it shall pass with reference to the particular subject or subjects embraced within the call. In this connection it may be stated that the Governor did not attempt to do this, as is clearly shown by the fact that he signed the bill which the Legislature passed.

The equality of the executive, legislative and judicial departments is recognized throughout our Constitution, and the supremacy of each department in its appropriate sphere is a cardinal principal thereof. It has been well said that, in this matter, "truth lies between the extremes, and the middle of the road is the path of safety." *In re* Governor's Proclamation (Col.), 35 Pac. 530.

It is also a well settled principle of constitutional law that no tax can be levied except for raising revenue for a public use. The right to tax therefore depends upon the ultimate use or purpose for which the money is to be raised. It follows that the use or purpose for which revenue is raised by taxation is so intimately connected with the object thereof that they necessarily constitute one subject or purpose.

When the proclamation, together with the legislative acts referred to in it and the special message, are considered and read together, the mind is forcibly and clearly impressed with the idea that the financial distress of the common schools of the State was the purpose of the Governor's calling the Legislature in extraordinary session, and that this subject was the one to be considered by it.

As a necessary incident to granting relief, of course it would be necessary to pass some kind of a bill for raising money. This, however, was only a means to an end. The raising of the money by taxation was ancillary to the main purpose, which was the relief of the common schools.

Our Constitution provides that the State shall ever maintain a general, suitable and efficient system of free schools, and, in the opinion of the Governor, this mandate of the Constitution could not be complied with unless he called the Legislature in extraordinary session for the purpose of passing a bill to raise additional revenue for their support and maintenance.

Under the principles of law laid down by the text-writers cited in *Jones* v. *State, supra,* "the Legislature may act freely within the call; may legislate upon all or any of the subjects specified, or upon any part of a subject; and every presumption will be made in favor of the regularity of its action."

The intention of the constitutional provision in question is to prevent the enactment of laws having no connection or relation to the purpose or subject embraced in the call. The particular kind of bill upon the subject embraced in the call is left to the discretion of the Legislature, subject to the right of the Governor's veto, as provided in other sections of the Constitution.

While the courts, in determining this question, will inquire whether the legislative act passed at a special session was within the Governor's call, in doing so they must give a liberal construction with a view of upholding the act if it can be reasonably done. In this way, and in this way alone, can the supremacy of the three departments of the State be preserved.

The Governor, in his proclamation and message, called the attention of the Legislature to the purpose for which they were convened and the subject upon which, in his opinion, there was an immediate necessity for legislation, and that subject was school taxation. He could not restrict the Legislature to any particular bill for the purpose. It was for the Legislature to determine what the legislation should be. It passed a bill for the purpose of raising money for the common schools. This act the Governor approved, thus deciding for himself that it was embraced in the subject mentioned in his proclamation. The bill passed was germane to the subject men-

tioned in his call, and we think that the court should have so held.

In short, the purpose of calling the Legislature in extra session was to secure additional revenue for the common schools, and this was the subject upon which the legislation was sought. The particular kind of revenue bill was ancillary or incidental to the subject, and was merely a means to accomplish the end desired; and the Legislature was supreme in this field. It could not, however, have taken up other subjects, such as revenue bills for the relief of road districts, drainage districts, levee districts, and the like, until it had disposed of the subject in hand: additional revenue for the relief of the common schools. Therefore we respectfully dissent.