SMITH *v.* CURRAN.

1. CONSTITUTIONAL LAW — SPECIAL SESSION OF LEGISLATURE — GOVERNOR'S MESSAGE.

Language in governor's message to special session of legislature that it was called ''to reconsider several important matters'' which had been before it in its general and preceding special sessions *held,* to require further designation before the subjects could be deemed submitted to it.

2. SAME—SPECIAL SESSION OF LEGISLATURE.

   The guiding principle in sustaining legislation enacted at a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields for legislation.

3. SAME—PRESUMPTIONS.

   The presumption is always in favor of the constitutionality of a statute passed at a special session of the legislature and it will be held within the call therefor if it can be done by any reasonable construction.

4. STATUTES—APPROVAL BY GOVERNOR.

   Whether a statute enacted at a special session of the legislature falls within the subjects submitted by the governor is a judicial question and it is immaterial that he has approved the bill after its enactment.

5. SAME—LEGISLATIVE ACTION.

   The legislature has freedom to act upon the subjects submitted to it for consideration at a special session and may not be restricted to consideration of a particular bill, although the governor may limit the subject.

6. SAME—MUNICIPAL BOND VALIDATION ACT.

   Statute enacted at special session of legislature permitting validation of any municipal bonds even when issued without legal power, *held,* unconstitutional as not included within governor's message submitting for consideration the subject of "validation of bonds issued by a municipality under sufficient popular vote regardless of technical requirements" (Const., art. 5, § 22; Act No. 31, Pub. Acts 1934 [Ex. Sess.]).

Mandamus by John W. Smith and others, comprising the common council of the City of Detroit, a municipal corporation, to compel William J. Curran, controller of the City of Detroit, to execute and issue refunding bonds. Submitted June 26, 1934. (Calendar No. 37,972.) Writ denied September 18, 1934.

*Raymond J. Kelly,* Corporation Counsel, and *Paul T. Dwyer,* Assistant Corporation Counsel, for plaintiffs.

*Clarence J. Huddleston,* for defendant.

Fead, J.   The city of Detroit is engaged upon a project to refund $360,000,000 of bonds.   Some are original obligations of the city.   Some were issued by other municipalities and assumed by the city on annexation of territory of issuing districts.   Some were approved by popular vote.   Some were issued by the legislative bodies of municipalities without vote of the people.   The records of some have been wholly lost.   The city of Detroit had recognized its obligation for them, has levied taxes for many years and made payments of principal and interest and provided sinking funds without protest or objection of taxpayers.   In the refunding operation, however, approval of the validity of the bonds by counsel has been demanded and, because of the loss of records, the city desires the aid of a validation act of the legislature.   To provide a test case, the city controller has formally refused to issue the refunding bonds and the members of the common council have petitioned for a writ of mandamus to compel him to issue them.   His defense is that the validation law, Act No. 31, Pub. Acts 1934 (Ex. Sess.), was adopted in violation of the Constitution, article 5, § 22:

"No bill shall be passed at a special session of the legislature on any other subjects than those expressly stated in the governor's proclamation or submitted by special message."

March 15, 1934, the common council of the city of Detroit adopted a resolution assuming liability for all bonds above mentioned and providing for their inclusion in the refunding plan.   On the same day a bill was introduced in the legislature, convened in special session, which was afterwards enacted as Act No. 31, Pub. Acts 1934 (Ex. Sess.).   The act reads:

"An act to provide for the ratification, validation and confirmation of certain bonds heretofore issued by any city, or by any school district or territory which has become annexed to any city, acknowledgment of which bonded indebtedness has heretofore been or shall hereafter be made by such city; and authorizing the refunding of such bonds.

*"The People of the State of Michigan enact:*

"SECTION 1. Whenever the legislative body of any city shall have adopted prior to April fifteen, nineteen hundred thirty-four, a resolution by a majority vote of its members-elect, acknowledging as valid indebtedness of said city any outstanding bonds theretofore issued by said city, and any outstanding bonds of any township, city, village or school district, the payment of all or a portion of which has been assumed through the annexation of additional territory to said city, all such bonds are hereby ratified, validated and confirmed as binding obligations of said city. All said outstanding bonds of the city, and all said outstanding annexed district bonds, or the portion so assumed by such city, may be refunded from time to time under the provisions of the general laws by the issuance of refunding bonds of said city, and no irregularity or other infirmity in or absence of the proceedings authorizing such outstanding bonds shall ever be set up as a defense to the payment of said refunding bonds or the interest thereon. The legislative or governing body of said city and of the existing unannexed township, village, city or school district, may enter into any contract relative to the payment of the balance of said bonds and interest as shall not be prejudicial to the rights of the bondholders. Any bonds so assumed on any territory not so annexed shall not be construed to be included in the bond limitation of the city assuming same in cases where the school district, township, village or city primarily liable on said bonds shall agree to reimburse the obligating city."

The governor called the session "for the consideration of such matters as may be submitted by special message."

Upon the legislature convening, the governor delivered a message beginning:

"You have been called in special session to reconsider several important matters which have been before you in your general session, or in your special session, or in both of these sessions. In addition, legislation has been requested on some matters which either have not been before you heretofore, or which are indicated as a result of the administration of laws previously passed by you."

Petitioners contend this language submitted all subjects considered at the general session. But by its own words it was confined to "several important matters," which needed further designation before they could have been deemed to be submitted to the legislature.

The message further stated:

"Upon the recommendation of legislative council, I am also submitting to you for consideration and action, the following bills: * * *

"4. A bill providing for the validation of bonds issued by a municipality under sufficient popular vote regardless of technical requirements."

Apparently the bill so referred to by the governor was one introduced to validate certain bonds issued by cities to acquire light and power plants and which was enacted as Act No. 6, Pub. Acts 1934 (Ex. Sess.).

The primary problem is to determine the "subject" submitted by the special message. A multitude of cases illustrating the scope and limitation of subjects under similar constitutional provisions are

cited in 59 C. J. p. 530, note, but none is in direct point. The principles involved are established with practical unanimity and are well stated in the following excerpts:

"This constitutional provision contemplates that there shall first exist in the executive mind a definite conception of the public emergency which demands an extraordinary session. His mental attitude or intention is expressed in his proclamation, the purpose of which is to inform the members of the legislature of subjects for legislation, and to advise the public generally that objections may be presented if desired. It is not only a guide or chart with respect to which the legislature may act, but also a check restricting its actions so that rights may not be affected without notice. The proclamation may contain many or few subjects according to the governor's conception of the public need. While the subjects may be stated broadly or in general terms, the special business, as related to the general subject on which legislation is desired, should be designated by imposing qualifying matter to reduce or restrict. Although the subjects should be sufficient to evoke intelligent and responsive action from the legislature, it is not necessary that they include all the methods of accomplishment. The guiding principle in sustaining legislation of a special session is that it be germane to, or within, the apparent scope of the subjects which have been designated as proper fields for legislation. In construing a call the words of any portion thereof must be interpreted not only as commonly and universally understood, but also as applicable to the subject intended to be affected by legislation.

"While the legislature must confine itself to the matters submitted, it need not follow the views of the governor or legislate in any particular way. Within the special business or designated subjects

submitted, the legislature cannot be restricted or dictated to by the governor. It is a free agent, and the governor, under the guise of definition, cannot direct or control its action. Nor is it confined to any one subject but may chose (choose) from parts of different subjects, provided a new subject, unrelated to those stated, is not acted upon." *Commonwealth, ex rel. Schnader, v. Liveright, Secretary of Welfare*, 308 Pa. 35 (161 Atl. 697).

"It is agreed, so far as any of the cases speak on the matter, and this view is undoubtedly sound, that the presumption is always in favor of the constitutionality of an act, and that any piece of legislation so under consideration should be held within the call if it can be done by any reasonable construction." *State, ex rel. National Conservation Exposition Co., v. Woolen*, 128 Tenn. 456, 487 (161 S. W. 1006, Ann. Cas. 1915C, 465).

Whether a statute enacted at a special session of the legislature falls within the subjects submitted by the governor is a judicial question. *Sims v. Weldon*, 165 Ark. 13 (263 S. W. 42); *Jones v. State*, 154 Ark. 288 (242 S. W. 377).

It is immaterial that the governor, by formal signature, has approved the bill after its enactment by the legislature. *Wells v. Railway Co.*, 110 Mo. 286 (19 S. W. 530, 15 L. R. A. 847); *Manor Casino v. State* (Tex. Civ. App.), 34 S. W. 769; *Jones v. State*, 151 Ga. 502 (107 S. E. 765).

We may disregard the reference in the governor's message to the bill prepared by the legislative council because the governor cannot restrict the legislature to consideration of a particular bill. Within the subject submitted, the legislature has freedom of action.

The scope of the message is plain. Stretched to the breaking point in an attempt to sustain the law,

it permitted the legislature to provide for the validation of all bonds issued upon existing basic legal authority, *i. e.,* upon approval of the required number of voters when popular vote was required by statute and upon action of the legislative body of the municipality when popular vote was not necessary. Obviously an essential of validation under the message would be a showing of such basic authority.

Act No. 31 goes further. It permits validation of bonds where issued without legal power, *i. e.,* without sufficient popular vote when such vote was required and without authority of law of the issuing body.

To sustain Act No. 31, the message would need to be construed as submitting the subject of validation of municipal bonds without limit or condition as to the character of their imperfections, whether mere irregularity in the issuance or total want of authority to issue. It would cover bonds issued without sufficient popular vote in direct conflict with the express words of the message.

The "subject" submitted in the message was not wholesale validation of bonds. It covered only kinds of bonds which form a logical and natural class for validation, separate and distinct from the other class also covered by Act No. 31. While the governor, within the range of a "subject" may not restrict the legislature, he has the authority to limit the subject according to his conception of the need for legislation. Thus, a proposal for action upon a certain tax would not throw open the whole matter of taxation for legislation or a recommendation as to a crime would not include the entire realm of criminal law.

We hold Act No. 31 unconstitutional.

The immediate effect of this ruling upon the city of Detroit may be temporarily disturbing but the

record shows that a refunding plan has been under negotiation for nearly two years, one regular and three special sessions of the legislature have intervened, a contract for refunding was executed a year ago, and another session of the legislature will be held in about six months. The situation does not indicate such dire need nor diligence as would induce extension of the governor's message beyond its plain terms and constitutional effect.

Writ denied, no costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.