MONTANA *ex rel.* HAIRE *v.* RICE, STATE TREASURER.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 252.    Argued January 7, 8, 1907.—Decided January 28, 1907.

Although a Federal right may not have been specially set up in the original petition or earlier proceedings if it clearly and unmistakably appears from the opinion of the state court under review that a Federal question was assumed by the highest court of the State to be in issue, and was actually decided against the Federal claim, and such decision was essential to the judgment rendered this court has jurisdiction to reëxamine that question on writ of error.

In granting lands for educational purposes to Montana by § 17 of the Enabling Act of February 22, 1889, 25 Stat. 676, to be held, appropriated, etc., in such manner as the legislature of the State should provide, Congress intended to designate, and the act will be so construed, such legislature as should be established by the constitution to be adopted, and which should act as a parliamentary body in subordination to that constitution; and it did not give the management and disposal of such lands to the legislature or its members independently of the methods and limitations prescribed by the constitution of the State.

Whether a state statute relating to the disposition of such lands and their proceeds is or is not repugnant to the state constitution is for the state court to determine and its decision is conclusive here.

Where the claim that the construction given to a state statute by the highest court of the State impairs the obligation of a contract appears for the first time in the petition for writ of error from this court, it comes too late to give this court jurisdiction of that question even though another Federal question has been properly raised and brought here by the same writ of error.

By an act approved February 22, 1889, 25 Stat. 676, hereafter referred to as the Enabling Act, the State of Montana

was, with other States, admitted to the Union. By it grants
of public lands were made by the United States to the several
States admitted, of which only those made by section 17 need
be stated here. By that section grants were made to the State
of Montana in the following terms: ·

"To the State of Montana: For the establishment and main-
tenance of a school of mines, one hundred thousand acres;
*for State Normal School, one hundred thousand acres;* for agri-
cultural colleges, in addition to the grant hereinbefore made
for that purpose, fifty thousand acres; for the establishment
of a State Reform School, fifty thousand acres; for the estab-
lishment of a deaf and dumb asylum, fifty thousand acres;
for public buildings at the capital of the State, in addition to
the grant hereinbefore made for the purpose, one hundred
and fifty thousand acres.

" . . . *And the lands granted by this section shall be
held, appropriated and disposed of exclusively for the purposes
herein mentioned, in such manner as the legislatures of the
respective States may severally provide.*"

Provision was made in the act for the selection of the granted
lands from the surveyed, unreserved and unappropriated public
lands of the United States, and selections were made by the
State of Montana. The constitutional convention of Montana
adopted an ordinance designated as Ordinance No. 1, entitled
"Federal Relations," which ordained that "the State hereby
accepts the several grants of land from the United States to
the State of Montana, . . . upon the terms and condi-
tions therein provided." An act of the legislative assembly of
the State of Montana, approved February. 2, 1905, authorized
and directed the state board of land commissioners to sign
and issue interest-bearing bonds to the amount of $75,000,
for the principal and interest of which the State of Montana
should not be liable (section 1), and directed the state treasurer
to sell the bonds (section 6). Section 7 directed that—

"The moneys derived from the sale of said bonds shall be
used to erect, furnish and equip an addition to the present

State Normal School building at Dillon, Montana, and shall be paid out for such purpose by the state treasurer upon vouchers approved by the executive board of the State Normal School, and allowed and ordered paid by the state board of examiners."

The law further provided that all sums realized from the sale of, or the leasing of, or from licenses to cut trees on the lands granted for the State Normal School by section 17 of the Enabling Act should be pledged as security for the payment of the principal and interest of the bonds issued under the act, and should be set apart as a separate fund for that purpose. It was made the duty of the state treasurer to keep such money in a fund to be designated as the State Normal School fund, and to pay therefrom the principal and interest of the bonds authorized by the act.

Section 12, Article XI, of the constitution of the State of Montana is as follows:

"The funds of the State University and all other state institutions of learning, from whatever source accruing, shall forever remain inviolate and sacred to the purpose for which they were dedicated. The various funds shall be respectively invested under such regulations as may be prescribed by law, and shall be guaranteed by the State against loss or diversion. The interest of said invested funds, together with the rents from leased lands or properties, shall be devoted to the maintenance and perpetuation of these respective institutions."

The bonds authorized by the foregoing law of the State of Montana were duly offered for sale, and purchased by the state board of land commissioners themselves as an investment of the common school fund of the State.

Charles S. Haire performed valuable services as an architect in the erection of an addition to the State Normal School, obtained vouchers approved and allowed in the manner prescribed in section 7 of the state law, and presented the vouchers to the state treasurer, who declined to pay them, whereupon the State of Montana, on his relation, brought a petition in

the Supreme Court of the State of Montana against the state treasurer, praying an alternative writ of mandamus, directing the respondent to pay his claim out of the fund created by the sale of bonds aforesaid, or to show cause for the refusal. The alternative writ issued, and to it the respondent interposed a demurrer and a motion to quash. The only reason alleged by the respondent in support of his pleadings, material here, was that the act of the legislature was in violation of the constitution of Montana. The case was heard by all the judges of the Supreme Court of the State, as an original case, and it was adjudged that the alternative writ of mandamus be quashed and the proceedings dismissed, for the reasons that the act authorizing the issue of the bonds, secured by pledge of the proceeds of the lands, was a violation of section 12, article XI, of the state constitution, and that this section of the constitution was not in conflict with section 17 of the Enabling Act. Haire then petitioned the court for a rehearing, alleging the following reasons:

1. Because the opinion is inconsistent and contradictory;

2. Because the court does not give any force or effect to the requirements of section 17 of the Enabling Act, that the lands granted for a State Normal School shall be *appropriated* for the purpose for which the grant is made, and in other respects misconstrue section 17;

· 3. Because the court misconstrued section 12, article XI, of the constitution of Montana.

In the further development and specification, in the petition for rehearing of the second reason, it appears, in substance, that among the grounds relied upon to support it were the claims that section 17 of the Enabling Act had directed that the legislature and not the State should dispose of the granted lands; that the lands or their proceeds were appropriated by Congress to the establishment as well as the maintenance of the normal school; and that in acting in pursuance of the authority conferred by Congress the legislature was not restricted by the constitution of the State, which in that respect was subordinate

to the authority of a law of the United States. The Supreme Court of the State took the petition for rehearing under advise-ment, modified slightly, but not essentially, its former opinion, which had passed adversely on the claims of the petitioner set forth in the petition for rehearing, denied the rehearing and entered final judgment for the respondent. Whereupon this writ of error was brought, assigning as errors:

"I. The said court erred in holding and deciding that the act of Congress, approved February 22, 1889, providing, among other things, for the admission of Montana into the Union, and known as the 'Enabling Act,' does not authorize the legislative assembly of the State of Montana to appropriate or apply the proceeds derived from the sale or leasing of the lands granted to said State by section 17 of said act for state normal schools, or from the sale of the timber thereon, to the establishment of such schools.

"II. The court erred in holding that section 12 of article XI of the constitution of the State, as construed by said court, is not repugnant to section 17 of said act of Congress, and is valid.

"III. The court erred in holding and deciding that section 12 of article XI of the constitution of the State of Montana, as construed by said court, does not impair the obligation of the contract resulting from the acceptance of the grant of lands made to the State of Montana by section 17 of said act of Congress.

"IV. The court erred in holding and deciding that the pro-ceeds derived from the sale of said lands and the timber thereon constitute a permanent fund, no part of which can be used to establish a State Normal School, or for any other purpose except that of investment.

"V. The court erred in holding and deciding that the in-terest received from the investment of the proceeds of the sale of said lands and the timber thereon, together with the rents derived from leasing said lands, can be used only for the purpose of maintaining and perpetuating a State Normal School.

"VI. The court erred in holding and deciding that the act of the legislative assembly of the State of Montana, entitled 'An act to enable the normal school land grant to be further utilized in providing additional buildings and equipment for the State Normal School College,' approved February 2, 1905, is invalid, as being in conflict with section 12 of Article XI of the constitution of the State of Montana.

"VII. The court erred in denying the application of plaintiff in error for a writ of mandate."

*Mr. M. S. Gunn* for plaintiff in error:

The Enabling Act authorizes the legislative assembly of the State of Montana to appropriate the proceeds derived from the sale and leasing of the lands granted to said State, by § 17 of said act, for state normal schools, and from the sale of the timber thereon to the establishment of such schools.

If, as plaintiff in error contends, § 17 of the Enabling Act authorizes the legislative assembly of the State to appropriate the proceeds derived from the said lands to the establishment of state normal schools, then § 17 controls, notwithstanding the provisions of § 12; article XI of the state constitution as construed by the Supreme Court of the State. If a provision of a constitution or a statute of a State is inconsistent with the Constitution of the United States or an act of Congress, it is not law. Art. VI, Const. of the United States. Congress is given power to dispose of the public lands and to make all needful rules and regulations respecting them. Art. IV, § 3, Const. of the United States. Pursuant to this authority the grants in the Enabling Act were made. These grants are laws, and if § 12 of article XI of the constitution of Montana is inconsistent therewith, it must yield to the act of Congress making said grants, which is the supreme law of the land.

The acceptance of the grant contained in § 17 of the Enabling Act created a contract, and § 12 of article XI of the Montana constitution, as construed by the Supreme Court of the State, impairs the obligation of such contract. *McGehee* v. *Mathis*,

4 Wall. 143; *Missouri &c. Ry. Co.* v. *Railway Co.*, 97 U. S. 491; *Schulenberg* v. *Harriman*, 21 Wall. 44; *Gunn* v. *Barry*, 15 Wall. 10.

. *Mr. Albert J. Galen*, with whom *Mr. W. H. Poorman* and *Mr. E. M. Hall* were on the brief, for defendant in error.

MR. JUSTICE MOODY, after making the foregoing statement, delivered the opinion. of the court.

The objection is made that no Federal question is presented by the record. It must, therefore, be determined whether the controversy turned in the state court upon any Federal question, and if so, whether it was raised and decided in that court in the manner required to give this court jurisdiction to reexamine the decision upon it. The jurisdiction to do this depends upon whether the case falls within that part of section 709 of the Revised Statutes, by which this court is given the authority upon writ of error to reëxamine the final judgment or decree of the highest court of a State, "where any title, right, privilege or immunity is claimed under the Constitution, or any treaty or statute of, or commission held or authority exercised under, the United States; and the decision is against the title, right, privilege, or immunity specially set up or claimed, by either party, under such Constitution, treaty, statute, commission or authority." Our jurisdiction in this case does not exist, unless a right claimed under a law of the United States, or an authority exercised under the United States, was specially set up in and denied by the Supreme Court of. Montana. A brief discussion of the facts will determine whether these conditions of jurisdiction are present. The United States granted to the State of Montana one hundred thousand acres of the public lands for a normal school, to be held, appropriated and disposed of for such purpose, in such manner as the legislature should provide. The legislature, by a law enacted in due form, did provide that bonds should be issued, secured by the

proceeds of the sale, or leasing of the lands; that the proceeds of the bonds should be used for the erection of an addition to a normal school building and paid out for that purpose on approved vouchers. In effect, though by a circuitous method, this was a devotion of the proceeds of the sale of the land to the erection of an addition to the building. Haire presented to the state treasurer, the custodian and disbursing officer of the fund, approved vouchers for his claim for services in the erection, and payment of them was refused. The State, on relation of Haire, by proceedings which were deemed appropriate in form, sought to enforce against the state treasurer the payment of the vouchers, claiming, as appears from the opinion of the state court:

First. That the legislature had authority, under a statute of the United States, namely, section 17 of the Enabling Act to deal with the lands as it did by the bond act;

Second. That the bond act was not in violation of the state constitution; and,

Third. That if it were in violation of that constitution, the law enacted in pursuance of an authority granted by the United States was valid and effective notwithstanding. All three of these claims were denied by the state court. The first and third are clearly claims of a "right under an authority exercised under the United States," and, therefore, raised a Federal question. *Maguire* v. *Tyler*, 1 Black, 195. But it is not enough that the claim of a Federal right arose upon the facts. It must also appear affirmatively that the right was "specially set up." No reference was made to any Federal right in the petition for the writ of mandamus, the demurrer, or the motion to quash, and the petition for a rehearing, where the Federal question was first brought forward by the plaintiff in error, so far as the record discloses, was denied by the court. It is not enough that the Federal question was first presented by a petition for a rehearing, unless that question was thereupon considered, and passed on adversely by the court. *Corkran Oil Company* v. *Arnaudet*, 199 U. S. 182.

But an examination of the opinion of the Supreme Court of the State shows clearly that that court decided two questions: first, that the bond act was in violation of section 12 of article XI of the state constitution, which in substance provided that all funds of the state institutions of learning should be invested and only the interest upon them used for the support of those institutions; and, second, a question stated in the opinion as follows: "But on behalf of the relator it is contended that by the terms of section 17 of the Enabling Act the lands granted to the State for normal school purposes are to be held, appropriated and disposed of exclusively for normal school purposes, in such manner as the legislature of Montana may provide, and that this act is sufficiently broad to warrant the legislature in borrowing money and pledging such lands for the payment of the principal and interest. And it is further contended that, if section 12 of article XI of the constitution contravenes the provisions of section 17 of the Enabling Act, section 12 is invalid and of no force or effect," which was decided adversely to the contentions stated. The decision of both questions, as the court determined them, was essential to the judgment rendered, and the decision of the second was a distinct denial of the Federal right claimed by the plaintiff in error. Where it clearly and unmistakably appears from the opinion of the state court under review that a Federal question was assumed by the highest court of the State to be in issue, was actually decided against the Federal claim, and the decision of the question was essential to the judgment rendered, it is sufficient to give this court authority to reëxamine that question on writ of error. *San José Land & Water Company* v. *San José Ranch Company,* 189 U. S. 177. Applying this rule to the case, there is jurisdiction to reëxamine the claim of the plaintiff in error on its merits.

In support of it the plaintiff in error argues that the grant of all the land by the Enabling Act was by an ordinance accepted by the State "upon the terms and conditions therein provided;" that the legislature of the State was by the last

clause of section 17 appointed as agent of the United States, with full power to dispose of the lands in any manner which it deemed fitting, provided only that the lands or their proceeds should be devoted to normal school purposes; and that, therefore, in the execution of this agency the legislature was not and could not be restrained by the provisions of the state constitution. It is vitally necessary to the conclusion reached by these arguments that the Enabling Act should be interpreted as constituting the legislature, as a body of individuals and not as a parliamentary body, the agent of the United States. But it is not susceptible of such an interpretation. It granted the lands to the State of Montana; and the title to them, when selected, vested in the grantee. In the same act the people of the Territory, about to become a State, were authorized to choose delegates to a convention charged with the duty of forming a constitution and state government. It was contemplated by Congress that the convention would create the legislature, determine its place in the state government, its relations to the other governmental agencies, its methods of procedure, and, in accordance with the universal practice of the States, limit its powers. It is not to be supposed that Congress intended that the authority conferred by section 17 of the Enabling Act upon the legislature should be exercised by the mere ascertainment of its will, perhaps when not in stated session, or by a majority of the votes of the two houses, sitting together, or without the assent of the executive, or independently of the methods and limitations upon its powers prescribed by its creator. On the contrary, the natural inference is that Congress, in designating the legislature as the agency to deal with the lands, intended such a legislature as would be established by the constitution of the State. It was to a legislature whose powers were certain to be limited by the organic law, to a legislature as a parliamentary body, acting within its lawful powers, and by parliamentary methods, and not to the collection of individuals, who for the time being might happen to be members

of that body that the authority over these lands was given by the Enabling Act. It follows, therefore, that in executing the authority entrusted to it by Congress the legislature must act in subordination to the state constitution, and we think that in so holding the Supreme Court of the State committed no error.

It is further claimed by the plaintiff in error that the Supreme Court of the State erred in holding that the law under which bonds were issued and the proceeds of public lands devoted to their payment was repugnant to the constitution of the State. Upon this question the decision of that court is conclusive, and plainly we have no power to review it.

It is further urged that the construction given by the state court to its constitution impaired the obligation of a contract, resulting from the acceptance of the granted lands by the State of Montana, and that this impairment was in violation of the Constitution of the United States. Nothing more need be said of that claim than that it appears for the first time in the petition for a writ of error from this court, and the accompanying assignment of errors. This is not sufficient to give this court jurisdiction of any Federal question (*Corkran* v. *Arnaudet, ub. sup.*), even though another Federal question has been properly raised and brought here by the same writ of error. *Dewey* v. *Des Moines*, 173 U. S. 193.

Other questions were argued, but the view we have taken of the case renders it unnecessary to consider them.

The judgment of the Supreme Court of Montana is therefore

*Affirmed.*