## CITY OF COLLINSVILLE v. BRICKEY.

No. 15462—Opinion Filed Nov. 3, 1925.

Rehearing Denied Jan. 26, 1926.

**1. Nuisance—Private Person May Abate.**

Under section 7879, Comp. Stats. 1921, a private person may maintain an action for a public nuisance if it is specially injurious to himself, but not otherwise.

**2 Municipal Corporations — Pollution of Stream by Sewage—Liability to Riparian Owner.**

Where a municipal corporation discharges sewage into a river or creek, polluting the water of the stream, causing it to become foul and impregnated with noxious and poisonous substances, rendering it unfit for domestic or other uses, and thereby creating and maintaining a nuisance, which is detrimental to the health, comfort and repose of a lower riparian owner and diminishes the value or destroys an established business of such riparian owner, such municipal corporation is liable for damages arising from the maintenance of such nuisance.

**3. Same — Ordinances — Extra Territorial Effect.**

Municipal charters or ordinances can have no extra-territorial force or effect and this is true even in cases where a municipality may have acquired property outside of its geographical limits.

**4. Same — Constitutional Limitation to Powers.**

The Constitution has authorized the defendant city to form a charter for its own government and this limitation implies that its authority is restricted to its own officers and the inhabitants within its territory or persons temporarily therein and that it cannot extend its powers or the authority of its officers to matters outside of its territory.

**5. Damages—Anticipated Profits — Exception to Rule.**

As a general rule, anticipated profits of a commercial, or other like business, are too remote, speculative and dependent upon uncertainties and changing circumstances to warrant a judgment for their loss. The exception to this rule is that the loss of profits from the destruction or interruption of an established business may be recovered where it is made reasonably certain by competent proof what the amount of the loss actually is; and such damages must be established, not by guesswork, conjectures, uncertain estimates, or mere conclusions, but by tangible facts from which actual damages may be logically and legally shown or inferred. Record examined, and held, this cause comes within the exception.

**6. Appeal and Error—Verdict Supported by Evidence.**

Where there is any evidence reasonably tending to support the verdict of the jury, such verdict will not be disturbed upon appeal.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Gertrude Brickey, doing business as the North Lane Dairy, against the City of Collinsville. Judgment for plaintiff, and defendant brings error. Affirmed.

Biddison & Campbell and P. L. Long, for plaintiff in error.

Frank Ertell and Humphrey & Campbell, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Tulsa county, Okla., by Gertrude Brickey, defendant in error, plaintiff below, against the city of Collinsville, a municipal corporation, plaintiff in error, defendant below, to recover damages for injury to her dairy business by polluting the stream running through her property, caused by the discharge of sewage from said city into said stream.

The parties will be referred to in this opinion as plaintiff and defendant, as they appeared in the lower court.

The petition, in subtance, alleges that the plaintiff was the owner in fee simple of 60 acres of land in Tulsa county, Okla., and that a long time prior to the filing of this action she was the owner of, operating and conducting a dairy, known as the North Lane Dairy, on her lands, and owned and milked approximately 60 high-bred cows; that she sold the products of said dairy in the city of Tulsa at a monthly profit of $400 net; that she had employed many years of hard labor in acquiring said cows and breeding them up to a high standard, and that she owned approximately 44 head of high-bred heifers, which would have become milch cows in a short time, which would have increased the products and value of her dairy; that she raised and produced hogs on said farm, from which she received a substantial net income; that there was a fresh water creek fed by springs flowing through and across the lands of plaintiff, and there were no good wells on the farm, and she had no other means of getting water for her cows and other animals, and that she used the water from the creek for said purposes; that the defendant city had laid

and maintained a sewer system, through which the waste, filth and sewage of the city were conveyed and discharged into said creek near the property line of the plaintiff, which polluted, poisoned and made unfit the water of said creek; that she had been compelled to quit using the water for her dairy herd and other animals; that her dairy had been condemned by the health department of the city of Tulsa, the place in which she marketed her milk, and she had been forbidden to sell the milk from said dairy in the city of Tulsa; that she had no other place to move said dairy, and was not financially able to purchase another farm, and she was compelled to sell her cows and heifers and other dairy property, to her damage in the sum of $12,000. There are other allegations and claims of damage to her homestead, but they were dismissed by the plaintiff, and the cause proceeded to trial upon the claim for damages to her dairy business and to her animals.

The defendant answered by way of general denial, but admitted that the plaintiff was a resident of Tulsa county, and that the defendant was a municipal corporation of the first class, created and existing under the laws of the state of Oklahoma, and that said corporation was located in Tulsa county, Okla. An amendment to the amended petition was filed on the 8th day of December, 1923, by the plaintiff, in which, in substance, it was alleged that the defendant corporation had actual and positive knowledge of its acts complained of by plaintiff, and that the manager and other officers of said defendant knew that said wrongful acts of defendant were resulting in injury to the plaintiff, as charged in her petition, and knew such facts prior to the time she was compelled to discontinue her business, and within 30 days thereafter; that all the matters had been discussed among themselves and with the plaintiff and others representing her within 30 days after the time the plaintiff was compelled to discontinue her business and to sell her cows, and that she and her husband, who was acting for her at the time, advised said officers that they would have to institute action against the city of Collinsville to recover any and all damages sustained by reason of the wrongful acts charged against the defendant in her petition; and they admitted the seriousness of the injury done to her and advised her not to permit the officers of the Health Department of the state of Oklahoma to see the conditions existing, as it would result in the Health Department of the state causing the city of

Collinsville to discontinue the operation of the sewage system, and with full knowledge of all conditions, still continued to discharge said sewage into said stream to the damage of plaintiff, as alleged in said petition; and that said defendant had waived any right to further notice, as it had full knowledge of all the facts, and that the giving of said notice would have been a useless act and would have served no legal or beneficial purpose in any way, and would not have conveyed any additional information to the defendant, or its officers or business manager, other than that they had already, and that they knew that said action was to be commenced and advised her to bring the action for the recovery of damages, which she had sustained; that her attorney wrote letters to the defendant, its officers, and business manager, within 30 days after the commission of the wrongful acts complained of herein, which letters were acknowledged and answered by the defendant; that the said wrongful acts of the defendant, from which the injury was sustained by the plaintiff, were not suffered by any act committed within the corporate limits of the city of Collinsville, but were committed on the farm of the plaintiff, which was some distance from the city, and that no provision of the charter with reference to notice has any application in this case. The defendant answered this amendment to the amended petition by way of general denial.

The cause proceeded to trial upon these issues, and at the close of all the evidence, the jury returned its verdict in favor of the plaintiff in the sum of $10,000. Motion for new trial was filed, heard, and overruled, exception reserved by the defendant, and judgment was pronounced upon the verdict of the jury by the court for the sum of $10,000 and her costs, to which the defendant excepted, gave notice of appeal and the cause comes regularly upon appeal by defendant from said judgment for review by this court.

The attorneys for defendant set up 26 assignments of error in their petition in error, but content themselves by arguing the same upon three propositions: First, that the plaintiff failed to give the notice to the defendant, as required in section 9, article 18, of the charter of the city of Collinsville, Okla.; second, that the judgment for the plaintiff for the alleged compelled discontinuance of the business of the plaintiff, by virtue of the alleged condition of the creek flowing through the plaintiff's farm, caused by the pollution of the stream

by the discharge of the sewage from the city, was wrong and was barred by the statute of limitation; and third, that the judgment of the court was based upon anticipated profits, and that the pleadings and evidence did not justify the judgment in this case.

In a proper case, a defendant city is liable to a party for injury done by reason of discharging its sewage into a creek that traverses the property of the person injured. Section 7879, Comp. Stats. 1921, provides:

"A private person may maintain an action for a public nuisance if it is specially injurious to himself, but not otherwise."

Section 6526 makes it a criminal offense for a person "to deposit, place, throw, or permit to be deposited, placed or thrown, any lime, dynamite, poison, drug, sawdust, crude oil or other deleterious substance, in any of the streams, lakes or ponds of this state," and subjects the person so offending to a fine or imprisonment in the county jail.

In the case of Markwardt v. City of Guthrie, 18 Okla. 32, 90 Pac. 26, the Supreme Court of Oklahoma said:

"Where a municipal corporation discharges sewage into a river or creek, polluting the water of the stream, causing it to become foul, and impregnated with noxious and poisonous substances, rendering it unfit for domestic or other uses, and thereby creating and maintaining a nuisance, which is detrimental to the health, comfort and repose of a lower riparian owner and diminishes the value of his land, such municipal corporation is liable for damages arising from the maintenance of such nuisance."

To the same effect are the following cases: Colbert v. City of Ardmore, 31 Okla. 537, 122 Pac. 508; City of Ardmore v. Colbert, 52 Okla. 235, 152 Pac. 603; City of Chickasha v. Looney, 36 Okla. 155, 128 Pac. 136. These authorities are directly in point, and, under said authorities, a city or town is liable in damages to a landowner, who has been damaged by the discharge of the sewage from said city or town, where the damage results to the adjacent landowner from said wrongful acts.

It is, however, contended by attorneys for defendant that the plaintiff did not give the business manager notice in writing of such injury within 30 days after the damage had accrued to the plaintiff, under section 9, article 18, of the charter of the city of Collinsville, Okla., which reads as follows:

"Sec. 9.    Before the city of Collinsville shall be liable for damages of any kind, the person injured or some one in his behalf, shall give the business manager notice in writing of such injury within 30 days after the same has been received, stating specifically in such notice when, where and how the injury occurred and the extent thereof. The city of Collinsville shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, highway or grounds, or any public work of the city, unless the specific defect causing the damage or injury shall have been actually known to the business manager or city engineer by personal inspection for a period of at least 24 hours prior to the occurrence of the injury or damage, unless the attention of the business manager or city engineer shall have been called thereto by notice thereof in writing at least 24 hours prior to the occurrence of the injury or damage and proper diligence has not been used to rectify the defect after actually known or called to the attention of the business manager or city engineer as aforesaid."

To this contention the attorneys for plaintiff contend that the notice given was sufficient to substantially comply with this provision of the charter, and, further, that the provisions of the charter were not binding on the plaintiff, since the plaintiff was a nonresident of Collinsville and the injury was done without the corporate limits of the city. Further, that the tort committed by the city in polluting the stream and destroying her dairy was a continuing nuisance and the notice was not required. The record discloses that the plaintiff and her husband had repeatedly taken the matter up personally with the officers of the city, including the manager; that they had discussed it with them repeatedly, and that the manager and officers of the city had full knowledge of the wrongful acts complained of in the petition, and that their attorney, on the 26th day of January, 1922, wrote to the city manager, advising him of the facts concerning the damage being sustained by the plaintiff, to which the city manager replied, and that the matter was discussed pro and con personally with the officers of the city and over the telephone between their attorney and the manager; and the question, therefore, comes up on the proposition as to the exact time the 30 days' notice should have been given. In our view of the case, based upon the facts, this was a continuing nuisance, beginning at a time long before this action was instituted and continuing down to and after the written notice was given, and at the time and after the action was begun, and still continues, so far as this record discloses. While it is

true that the evidence of Joe F. Morrow, the agent of the company, which purchased the milk from the plaintiff produced from her dairy, discloses that he ceased taking the milk from said dairy on the 17th day of December, 1921, we are of the opinion that the 30 days' time, as contemplated in the charter, did not begin to run on the 17th day of December, 1921, at the date the Tulsa health inspector condemned the milk, and the purchaser refused to accept the milk; that said act was only an incident. The city of Tulsa could not and did not close down the dairy and that such action was not the cause but the result of the injury complained of by plaintiff, and the nuisance and damage still continued, and the plaintiff was compelled to sell her dairy property and cows and to go out of business because of the wrongful act of defendant in continuing to pollute the stream. The precise question has never been passed upon by this court as to the validity of the provision of the charter requiring a written notice to be given. Former Justice Johnson, in the case of City of Tulsa v. Wells, 79 Okla. 39, 191 Pac. 186, held that the latter part of said provision of the charter, relative to the liability of the city on account of any damage or injury to personal property arising from or occasioned by any defect in any public highway or ground, or any public work of the city, the city not being liable, unless the city manager or city engineer, by personal inspection within 24 hours prior to the occurrence of the injury or damage, or by notice thereof, had knowledge of the defective condition, was void and not enforceable in the courts of this state, for the reason that it was unreasonable and amounted to denial of justice, following the cases cited in said opinion, but refused to pass upon the question of whether the 30 days' notice of damage should be given in writing to the manager, and held in that case that the giving of the notice, if it were a valid provision, was excused under the facts of that case. We are inclined to the opinion that the law does not require a useless and vain thing to be done, and that, under the evidence in this case, the city manager and the officers of the city had had their attention repeatedly called to the damage being done to this plaintiff, both orally and by letter, and the damage still continued to be done by the wrongful acts of the defendant with full knowledge of the facts, but, be that as it may, the further question arises, Does the provision, relied upon by the defendant, contained in the charter, apply in this case where the damage occurs to a nonresident of the city,

outside of the territorial limits and boundary of said city, and is this nonresident, who suffered injury outside of the territorial limits of the city, charged with notice of said provisions of the charter and charged with the duty to give said written notice to the manager? Keeping in mind that the manager had both oral and written notice, and that he and the officers had full knowledge of the acts complained of, and of the damage being done, and that it was a continuing nuisance and damage, and that, while said nuisance was being maintained and damage resulting therefrom, the written notice was given, which, in our judgment, was sufficient, we are further of the opinion that the plaintiff in this case was not bound to give said notice of damages resulting to her and her dairy located some distance from the confines of the city. This, for the reason that the charter and ordinances of the city of Collinsville have no extra-territorial effect and are only binding upon the inhabitants within the boundary of said city, or with other persons to whom damages result within the territorial limits of said city, and are only binding upon persons and interests temporarily or permanently within the limits of its municipal jurisdiction. Volume 2 of Abbott's Municipal Corporations, page 1381, announces the law to be as above stated. Section 1383, among other things, says:

"On the other hand, municipal ordinances or resolutions can have no extra-territorial force or effect, and this is true even in cases where a municipality may have acquired property outside of its geographical limits."

McQuillin's Municipal Ordinances, page 35, says:

"Municipal ordinances are necessarily local in their application. Usually, they operate only in the territory of the municipality by which they are enacted and can have no force beyond it."

In the case of Kennedy, City Treasurer, v. Miller, County Treasurer (Cal.) 32 Pac. 558, it is said, among other things:

"The Constitution has authorized the city to form this charter for its own government and this limitation implies that its authority is restricted to its own officers and the inhabitants within its territory, and that it cannot extend the authority of its officers to matters ouside of its territory."

We have examined carefully the cases cited by attorneys for defendant from the states of Washington, Oregon, Tennessee, and Texas, and in all those cases we have examined, we find that the damage complained of resulted from acts of the mu-

nicipality within its territorial limits or boundaries, and in the states of Washington, Oregon and Tennessee, we find that the notice to be given in those states is contained not only in the charter of the city, but also in the acts of the Legislatures of these states, but our statute on this subject only affects the question of costs. See: Town of Sallisaw v. Ritter, 42 Okla. 626, 142 Pac. 391; Inc. Town of Idabel v. Harrison, 42 Okla. 469, 141 Pac. 1110.

We are, therefore, of the opinion that, if the provision in regard to notice is a proper one, in this case the city had sufficient notice, both oral and written, and the giving of any other or further notice was excusable for the reason that it would have served no good purpose and would not have given the city any further information than it already had, and for the further reason, as heretofore stated, that said provision of the charter did not apply to a nonresident of said city for damages incurred outside of the territorial limits of said city.

On the second proposition, we find from the evidence and the record, that the statute of limitation does not apply, as the damage was a continuing damage, which finally forced the plaintiff out of business entirely, and she was entitled to recover such actual damage as she had already incurred, and such damage to her established business as resulted to her from having to discontinue the operation of her dairy.

On the third proposition, the evidence in the record shows that the plaintiff was receiving about $400 per month from her dairy, and that, after deducting the amount expended by her for feed and for hired help and other expenses, as testified by plaintiff and her husband, they were making a net profit of about $200 per month; that she had an established business that had been maintained from a small beginning in the year 1910, and had built it up to where she had about 70 or 75 head of female cattle, most of them sired by a high-bred premium Jersey male, and that she was compelled to quit her dairy business, to sell all of her Jersey herd, except two cows, and that all of this was the result of the wrongful acts of the said defendant in discharging its sewage into the creek, which was her only possible source for water for her stock and in running her dairy, and there was positive evidence of the gross amount she was receiving for the sale of her milk, and also as to expense, which was deducted, leaving the net amount received by her as profits in the sum of $200 per month, and, under the record, this presents a case that comes

within the exception as defined by this court in the case of Bokoshe Smokeless Coal Co. v. Bray, 55 Okla. 446, 155 Pac. 226, where the court said:

"As a general rule, anticipated profits of a commercial or other like business are too remote, speculative, and dependent upon uncertainties and changing circumstances to warrant a judgment for their loss. The exception to this rule is that the loss of profits from the destruction or interruption of an established business may be recovered where it is made reasonably certain by competent proof what the amount of the loss actually is; and such damages must be established, not by guesswork, conjectures, uncertain estimates, or mere conclusions, but by tangible facts from which actual damages may be logically and legally shown or inferred."

The jury heard the evidence, and there being no question raised here on the admissibility of evidence and none on instructions by the court, on the whole we are of the opinion that the jury was justified under the evidence in rendering the verdict in this case in favor of the plaintiff for the amount found by it, and the court was justified in rendering judgment thereon, and the court having sustained the verdict of the jury in denying the motion for new trial, we are of the opinion that the judgment should not be disturbed by this court.

We are, therefore, of the opinion that the judgment of the lower court should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 29 Cyc. pp. 1208, 1209, 1210. (2) 28 Cyc. pp. 1323, 1332, 1333, 1334; anno. 48 L. R. A. 691; 61 L. R. A. 694; 20 L. R. A. (N. S.) 1050; 47 L R. A. (N. S.) 137; L. R. A. 1918F, 208; 20 R. C. L. pp. 402, 403; 3 R. C. L. Supp. p. 1066; 4 R. C. L. Supp. p. 1360; 5 R. C. L. Supp. p. 1104. (3) 28 Cyc. p. 391. (4) 28 Cyc. p. 266. (5) 17 C. J. pp. 786, 787, 788, § 112; 795, 796, 797, § 117; anno. 52 L. R. A. 33, et seq.; 8 R. C. L. pp. 502, 508; 2 R. C. L. Supp. p. 622; 4 R. C. L. Supp. p. 558; 5 R. C. L. Supp. p. 472. (6) 4 C. J. p. 853; § 2834; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 79.