## CITY OF TULSA v. McINTOSH.

No. 18738.   Opinion Filed Feb. 11, 1930.

H. O. Bland and Harry L. S. Halley, for plaintiff in error.

A. F. Moss and H. R. Young, for defendant in error.

BENNETT, C. Fred McIntosh, 11 years old, was injured on May 22, 1918, by the explosion of a dynamite cap. The injuries necessitated the amputation of the thumb, the first, second, and third fingers of his left hand, and, in addition, the boy lost the sight of one eye and suffered a very serious injury to the other eye. Certain contractors who were doing work for the city left their box of tools, in which there was a large number of dynamite caps on the street, exposed, and this boy, among other school children, on the way to and from school, was attracted to the tool box and secured many of the dynamite caps and in playing with the same he tried to light one end of one of the dynamite caps and the injury resulted.

On June 24, 1918, Fred, by Andrew M. McIntosh, his father and next friend, by O'-Meara, Bush & Moss, their attorneys, filed with the proper officers of the city of Tulsa a written statement showing the age, name, and residence of Fred McIntosh, and the nature, time, and place and extent of the injury, and the circumstances leading up to the same, and alleging damages of $30,000.

Soon thereafter suit for damages for said injuries against the city and others was instituted by Fred McIntosh, by his next friend and father, resulting in judgment for the minor, which, upon appeal, was affirmed by this court. Tulsa v. McIntosh, 90 Okla. 50, 215 Pac. 624. The present action is brought by Andrew M. McIntosh against same defendants to recover consequential damages which plaintiff suffered by reason of the injuries to his minor son, including $1,000 alleged to have been expended for medical, hospital, and nurses' bills in the necessary treatment of said son, and also for the value of services of his said son during minority.

There was a verdict and judgment in the trial court for plaintiff for $1,500 from which the city of Tulsa appeals.

Defendant assigns 30 alleged errors of the court, but on page 46 of its brief appears this language:

"The real question in the appeal is whether or not the charter provision of the city of Tulsa, which required the filing of claims for damages against the city to be made to be filed within 30 days after the injury occurred, is a bar to the plaintiff's cause of action, where he did not file the claim until a year after the injury to his son, Fred McIntosh, for whose loss of services, hospital care, doctors' bills, and medicine bills he has sought to recover for.

"The record unquestionably shows that the claim of A. M. McIntosh was not filed un-

til May 20, 1919, as is shown at page 99 of the case-made. The record further shows that the claim of Fred McIntosh for his injuries was filed on May 24, 1918, case-made, page 91. The trial judge evidently took the position that it was not necessary for any claim to be filed by the father, and the only question that he submitted was whether or not Fred McIntosh's claim was properly filed, which is instruction No. 3."

This frank and proper statement then leaves for our determination the question whether or not the failure of the father (plaintiff) to file a written notice of injury, according to the charter provisions of the city of Tulsa, within 30 days, is a bar to his recovery. While this action might be determined upon other grounds, nevertheless the constitutionality of the charter provision of defendant, purporting to require notice, is here assailed, and since the question involved is of very great importance, it has been considered advisable to squarely meet the issue thus raised; otherwise this question will be presented again and again for attention.

It is worth noting that the validity of this identical charter provision has been twice presented to this court (City of Tulsa v. Wells, 79 Okla. 39, 191 Pac. 186, and City of Collinsville v. Brickey, 115 Okla. 264, 242 Pac. 249), but these cases passed up the question and left it for future determination.

The charter provision in question is section 9, art. 11, of the city of Tulsa, which charter was adopted by the people of that city under the provisions of article 18, sec. 3 (a), of the Oklahoma Constitution, and said section is as follows:

"Before the city of Tulsa shall be liable for damages of any kind the person injured, or some one in his behalf, shall give the mayor or city auditor notice in writing of such injury within 30 days after the same has been received, stating specifically in such notice when, where, and how the injury occurred and the extent thereof. * * *"

The assault on this section is as follows:

(1) That the limitation therein provided was not within the power of the city to enforce, for that it is in violation of article 5, sec. 46, subdivision (z) of the Oklahoma Constitution, which is as follows:

"Limitations upon power of Legislature to pass local or special laws. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: * * *

"(z). For limitation of civil or criminal actions."

(2) That the same is in violation of section 59, art. 5, of the Constitution of Oklahoma, which is as follows:

"General laws to have uniform operation. Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

(3) Because said provision of the charter of the city of Tulsa conflicts with and is an attempt to supersede the general statutes of the state of Oklahoma upon a matter of state and public concern. Section 3(a), art. 18, Okla. Const.

The view that we entertain makes it necessary for us to discuss only the first and second propositions. It will be observed that article 5, sec. 46, subd. (z) of our state Constitution places a specific limit upon the power of the state Legislature to pass local or special laws for the limitation of civil or criminal actions.

"The Constitution of each state, so far as it is consistent with the provisions of the federal Constitution, is the fundamental law of the state, is part of its supreme law, and acts passed by the Legislature inconsistent therewith are invalid. (East St. Louis v. Amy, 120 U. S. 600, 7 S. Ct. 739, 30 L. Ed. 798.) A state Constitution is also binding on the courts of the state, and on every officer and every citizen. Any attempt to do that which is prescribed in any other manner than that prescribed, or to do that which is prohibited, is repugnant to that supreme and paramount law, and invalid. (Norwalk St. Co.'s Appeal, 69 Conn. 576, 37 Atl. 1080, 38 Atl. 708, 39 L. R. A. 794.) Therefore it is the undoubted duty of the Legislature to act in subordination to the state Constitution (State of Montana v. Rice, 204 U. S. 291, 27 S. Ct. 281, 51 L. Ed. 490), and an act which the state Constitution clearly prohibits is beyond the power of the Legislature, however proper it might be as a police regulation but for such prohibition. (State v. Froehlick, 115 Wis. 32, 91 N. W. 115, 95 A. S. R. 894, 58 L. R. A. 757.) The limitations on legislative action may be by implication. Thus, where a Constitution prescribes the qualifications of electors, the Legislature cannot require additional qualifications. (Rison v. Farr, 24 Ark. 161, 87 Am. Dec. 52, and note.) Political subdivisions of the state are similarly bound by the provisions of the state Constitution." 6 R. C. L. p. 40, par. 34, and cases cited.

"It has also been said that a Constitution is to be interpreted by the spirit which vivifies, and not by the letter which killeth (Downes v. Bidwell, 182 U. S. 244, 21 S. Ct. 770, 45 L. Ed. 1088), and that a written Constitution is to be interpreted by the same spirit in which is was produced." (Wells v. Missouri Pac. R. Co., 110 Mo. 286,

19 S. W. 530, 15 L. R. A. 847.) 6 R. C. L. p. 47, par. 40.

"It is a fundamental canon of construction that a Constitution should receive a liberal interpretation, especially with respect to those provisions which were designed to safeguard the liberty and security of the citizen." (Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060.) 6 R. C. L. p. 49, par. 44.

"Words or terms used in a Constitution, being dependent on ratification by the people, must be understood in the sense most obvious to the common understanding at the time of its adoption. * * *" (Miller v. Dunn, 72 Cal. 462, 14 Pac. 27.) 6 R. C. L. p. 52, par. 47.

The recognized rule of construction is that words appearing in the Constitution shall be interpreted according to their plain, natural, and usual signification and import. Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23.

Under these interpretations it would seem reasonably clear that the Legislature had no power to pass any local or special law of limitations with respect to civil or criminal actions. A fortiori, the city of Tulsa, which is a small integral part of the state of Oklahoma, could not pass an act which fell under the inhibition of the state Constitution. It is true that the charter of Tulsa became the organic law of that city when it was adopted in pursuance of and in conformity with section 3 (a), art. 18, of the state Constitution. Nevertheless, that organic law could not conflict with the Constitution and laws of this state. Otherwise, a home rule charter adopted under the provisions of the Constitution might assume to itself powers not possessed by the Legislature or provided for by the Constitution. So that we conclude that if the Legislature had no power to pass a local or specific law limiting civil or criminal actions, certainly no city within the state could pass such an act.

There is sound and sane reason back of the limitations upon the powers of the Legislature, as shown by article 5, sec. 46, subd. (z), supra. It would seem to be highly important to the state of Oklahoma and to the happiness, contentment, and progress of its citizens that the laws with respect to the limitations of civil and criminal actions should be uniform. It is difficult enough for the citizen to be informed of the laws which uniformly apply throughout the state, without being compelled to guard against the varied enactments of numerous municipalities throughout the state on questions of general concern; otherwise, in attempting to enforce his rights, he may be met with almost as many different kinds of notice required and periods of limitation as there are cities involved.

There would seem to be no good reason why one city should be better protected than another against claims arising out of negligence; and if each city is permitted to promulgate its own limitations on such actions, necessarily it will make those limitations just as narrow as possible, and the courts will be continually passing on whether or not the same are reasonable. We think the clear purpose of the framers of the Constitution was that the limitations on all civil and criminal actions should be uniform throughout the state. This case and this particular charter provision indicate the wisdom of the constitutional provision. It will be observed that the latter part of said provision uses these words:

"The city of Tulsa shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, highway or grounds, or any public work of the city, unless the specific defect causing the damage or injury shall have been actually known to the mayor or city engineer by personal inspection for a period of at least 24 hours prior to the occurrence of the injury or damage, unless the attention of the mayor or city engineer shall have been called thereto by notice thereof in writing at least 24 hours prior to the occurrence of the injury or damage and proper diligence has been used to rectify the defect after actually known or called to the attention of the mayor or city engineer as aforesaid."

Of course this provision is worse than unconstitutional. It is absolutely absurd. But it indicates in a mild way just what provisions will be passed if the bridle is taken off and cities are allowed to pass their own statutes of limitation and impose without limit such conditions as they wish upon those who have claims against them.

Is this provision, which is required by the Tulsa charter, a limitation? Reduced to its final analysis any statute of limitation means simply that if a litigant shall allow a certain time to expire without bringing suit, the action is barred. In effect, the provision under discussion is that if the plaintiff shall allow 30 days to expire without giving written notice, his action is barred. The effect upon and the results to the plaintiff are identical. He is without means to enforce his legal right in the first case if he allows two years to pass without bringing suit, and in the second, if he allows 30 days to expire without having given notice. What could it be but a statute of limitations, in so far as he is concerned?

Upon examination of many cases dealing with situations somewhat similar to that here presented, we find that some of the cases speak of this kind of limitation as a "special limitation" or a "conditional limitation," and some of them speak of them simply as "limitations." Could it be assumed that the framers of the Constitution had in mind anything else except limitations, whether general, conditional, or special, which would have the effect of destroying plaintiff's right of action or his remedy?

In the case of Meisenheimer v. Kellogg (Wis.) 81 N. W. 1033, the court held in the syllabus:

"Under Rev. St. sec. 4222, providing that no action for personal injury shall be maintained unless, within one year after the accident, notice in writing is served on the person causing the injury, stating the time and place where the accident occurred, the service of such notice is not a condition precedent to a cause of action for malpractice, but is merely a statute of limitation; and hence the objection that such a notice fails to state where the injury occurred is waived, when not raised either by answer or demurrer."

The court in the opinion says:

"But it is argued that the notice of the injury which is set forth in the complaint is insufficient, in that it does not set forth the place where the damage occurred (Rev. St. sec. 4222), and that the giving of a sufficient notice is a condition precedent to the cause of action, and hence that no legal cause of action is alleged. The radical difficulty with this argument is that the notice required by the statute above mentioned is not a condition precedent to the cause of action, but is merely a statute of limitation. The distinction was clearly pointed out in the recent case of Relyea v. Pulp Co., 102 Wis. 301, 78 N. W. 412."

It was pointed out in the opinion that where an action is brought to enforce a common-law right, such as the case then before the court, the statute is necessarily a statute in the nature of a statute of limitations, because the right exists without the aid of any statute. The court says:

"No argument in support of this conclusion would seem to be required, the right of action existing independently of statute. The requirement of notice within a certain **time simply** sets a new time limit within which a certain step necessary to enforce the right must be exercised. It is not a condition which must exist before any right comes into being. **This distinction was** evidently overlooked in the cases of Manufacturing Co. v. Whitcomb, 101 Wis. 226, 77 N. W. 175, and Ryan v. Railway, 101 Wis. 506, **77 N. W. 894.**"

The court indicates that in neither of the latter cases was the question directly raised, nor was the attention of the court directed to it, and the holding in those cases is expressly overruled upon the point that the notice was a condition precedent instead of a statute of limitations.

In the case of City of Louisville v. McGill (Ky.) 52 S. W. 1053, the first paragraph of the syllabus is as follows:

"Ky. St. sec. 2752, prescribing a limitation of six months as to actions against cities of the first class for injuries to person or property, is special legislation, and therefore unconstitutional."

In City of Louisville v. Kuntz (Ky.) 47 S. W. 592, the syllabus is as follows:

"The special limitation of six months, provided by the charter of cities of the first class as to actions against such cities for damages, is in violation of Const. sec. 59, providing that the General Assembly shall not pass local or special acts to regulate the limitation of civil or criminal causes, and is not authorized by section 156 of the Constitution, which provides for the classification of cities only for the purpose of organization and government."

The provision of the charter in that case provides that "actions against the city for damages for injuries to persons or property shall be begun within six months after the cause of action accrued." The court said:

"The only question involved on the appeal is whether the statute of limitations relied on by appellant is a good defense to the action, and this depends upon the power of the Legislature to enact it. The question, therefore, to be determined is, is it a special or local act which is prohibited by section 59, subsec. 5, Const., which provides that 'the General Assembly shall not pass local or special acts concerning any of the following subjects or for any of the following purposes, namely: * * * Fifth, to regulate the limitation of civil or criminal causes'? Or is it authorized and embraced by the provisions of section 156 of the Constitution, which provides for the classification of cities and towns, and that the organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions? Appellant contends that as the provision relied on is a section of the general act of the Legislature passed in conformity with the requirements of section 156 of the Constitution, providing for the government of all cities of the first class, it is a general statute of local application, not special or local within the inhibition of section 59, and that it was within the power of the Legislature to pass it. This six-months statute of limitations was a

provision of the old charter of appellant prior to the adoption of the general act for the government of cities of the first class, and its constitutionality was upheld by this court in the case of Preston v. City of Louisville, 84 Ky. 118; and similar provisions in the charters of the city of Covington were held to be constitutional in City of Covington v. Voskotter, 80 Ky. 219, and City of Covington v. Hoadley, 83 Ky. 444. But at the time these opinions were rendered there was no constitutional provision enumerating specifically the subjects concerning which it was provided the Legislature should not pass local or special acts, and those cases turned upon the question as to whether this provision conferred a special privilege upon the city not in consideration of a public service; and it was held that, 'as between a municipal corporation and a private person, a different rule might be adopted by the Legislature,' upon the theory that 'the city is an arm of the state government, and as such performs a public service.' But section 59 of the Constitution expressly prohibits the Legislature from passing a local or special act relating to limitation, and this case clearly illustrates the wisdom of the provision. The city and an individual are sued for a joint trespass. If either is guilty, the city is most in fault, because it was the instigator of the wrong complained of, but, if the statute relied on is held to be not a local or special one, it will be permitted to escape all liability, while its mere servant in the perpetration of the injury must bear the burden of their joint wrongdoing; and thus we have one rule of limitation for cities of the first class, and another for all persons, natural or artificial.

"When the Constitution prohibits the Legislature from passing special laws upon any given subject, it means that all laws upon that subject shall operate alike upon all, whether individual or corporate, public or private. It is a safeguard provided by the Constitution for the protection of the weak as well as the strong. The Legislature has power to make laws fixing the time when an action must be brought, but they must be general in their character, as the Constitution prohibits the Legislature from discriminating in favor of or against individuals or classes, when it declares that there shall be no special legislation on the subjects enumerated in section 59. * * * While the cities of the state may be subject to different laws, so far as they relate to their organization and government, yet, as to matters prohibited by the Constitution, they must be subject to the same general laws which apply to other corporations and private citizens."

In Re Ruan St., 132 Pa. St. 275, 19 Atl. 221, it is said:

"In order that a given act of Assembly relating to a class of cities may escape the charge of being a local law, it is necessary, as was said in Weinman v. Railshould be' applicable to all the members of should be 'applicable to all the members of the class to which it relates, and must be directed to the existence and regulation of municipal powers and to matters of local government.' A law that will bear the application of this test is within the purposes for which classification was designed, and therefore constitutional. A law that will not bear its application is local, and offends against the Constitution. * * * It is very clear that the purpose of the constitutional provision is to require that laws relating to the several subjects enumerated in section 7 shall be general, affecting the whole state, so that the rule upon all these subjects shall be uniform throughout every part of the territory in which the Constitution itself is operative. For example, there cannot be one rate of interest in cities of the first class, another in those of the second or third and still another for the rest of the state; but the rate, when fixed by law, must apply to all parts and divisions of the state alike. * * * There are the civil rights of the citizen of Pennsylvania as such, and they are not affected by the size of the town in which he lives, or the value of his land, any more than by the color of his skin. They are the safeguards provided by the Constitution for the protection of the weak as well as the strong, the dweller in the country as well as the resident in the' cities off the first class,' and no system of classification of cities or other divisions of the state can disturb them."

The same general doctrine seems to be held also in Simpson v. Association (Ky.) 41 S. W. 570, and 42 S. W. 834; Levi v. City of Louisville, 97 Ky. 394, 30 S. W. 973; Gorley v. City of Louisville (Ky.) 47 S. W. 263.

In the case of Foxworthy v. City of Hastings (Neb.) 37 N. W. 657, plaintiff sued for damages alleging injuries from a negligently kept sidewalk. Among the defenses the defendant claimed that the claim was not presented in writing within six months, according to a special statute of limitations. Plaintiff contended that the special limitation was unconstitutional and void. Section 15, art. 3, of the Constitution provided that the Legislature shall not pass local or special laws in certain cases, and section 5 of the Code of Civil Procedure provided that "civil actions can only be commenced within the time prescribed in this title after the cause of action shall have accrued." The Code then enumerates the different classes of cases, and requires actions to be brought thereon within the time limited, being from one to ten years, and which, in the case of negligence, would be four years.

The court in the opinion says:

"Now, if a city is guilty of want of due care in the performance of a duty imposed upon it by statute, by reason of which an individual sustains injuries, its liability would be the same as that of a private corporation or of an individual under like circumstances. * * * There is no reason, therefore, why private acts of limitation should be passed in favor of any municipality. If, in the face of the plain provision of our Constitution prohibiting special legislation for municipalities, such an act could be maintained, then special acts might be passed to apply to private corporations or to individuals; and the spectacle might be presented of innumerable acts of limitation for the same class of cases. This would lead to great confusion."

Continuing, the court says:

"It would be very strange if a village, with just sufficient inhabitants and wealth to incorporate, should be liable for negligence causing injury for the full period of four years; while a city of the advanced class, with a large amount of wealth, should be liable but six months."

O'Connor v. City of Fond du Lac (Wis.) 85 N. W. 327, was a case involving consideration of a defense based upon failure of plaintiff to comply with a charter provision requiring presentation of claim sued on to the common council. The third paragraph of the syllabus is as follows:

"Failure to perform a statutory condition precedent to the commencement of an action —as one that no action shall be commenced to enforce a city liability until notice shall have been given of the existence thereof and the common council of the city have had an opportunity to pass upon the same— has the same effect as failure to comply with a statute of limitations. It is in the nature of such a statute, though failure to comply with it may only abate the action if objection be taken by answer or demurrer. If not so taken, the objection is waived."

See, also, Relyea v. Pulp Co., 102 Wis. 301, 78 N. W. 412; Malloy v. Railway Co. (Wis.) 85 N. W. 130; Meisenheimer v. Kellogg, 106 Wis. 30, 81 N. W. 1033.

It is not our holding that where the right of action is given by a statute and such statute contains its own limitation, the special limitation will not have to be substantially observed, for it then becomes a part of and a necessary prerequisite to the existence of the right of action. This distinction is easily observable throughout the range of cases. Bartlett v. Manor (Ind.) 45 N. E. 1060, and cases cited.

In Lambert v. Ensign Mfg. Co. (W. Va.)

26 S. E. 431, the first paragraph of the syllabus is as follows:

"Chapter 103 of the Code (sections 5, 6, p. 725, Ed. 1891) is the West Virginia Lord Campbell's Act, creating a cause of action where none existed at common law for wrongfully causing the death of a person; and the proviso that any such action shall be commenced within two years after the death of such deceased person is an essential restraining element of the right of action given."

In that case the court said the restrictive time allowed for bringing action was not, strictly speaking, a statute of limitations. But the court makes it clear that this holding was due to the fact that the right of action did not, prior to the statute, exist, and that when one is given a right by the statute he must accept the same subject to the statute; citing The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140; Taylor v. Coal Co., 94 N. C. 525, and other cases of similar holding.

The distinction is very clearly made in Peters v. Hanger, 134 Fed. 586. This doctrine is also announced in Wood on Limitations (4th Ed.) vol. 1, page 41, par. 9.

From these authorities it appears that where a common-law liability is asserted, these statutory provisions requiring presentation of notice, etc., are not an essential part of the right of action, but rather that they are statutes of limitation.

It therefore becomes necessary for us to determine whether the cause of action at bar arises from statute or from the common law.

It is contended that the right of the father to recover consequential damages for an injury to his minor son is either directly given by or is to be inferred from the statutes of our state, and therefore the Legislature may properly annex conditions precedent to or take away altogether such right, and we are referred to Dillon on Municipal Corporations, sections 1613, 1665, and 1687. The premise upon which this argument is predicated is denied by very high authority. Webster v. City of Beaver Dam, 84 Fed. 280, at page 282, where it is stated in the opinion:

"Whether the statute may be tested by that rule, as intimated in Hughes v. City of Fond du Lac, supra, even in case the right of action were wholly statutory, is not material for determination of the question here as one of first instance, for the reason that the doctrine is now firmly established by decisions of the Supreme Court

of the United States that municipalities are responsible for their mere acts of negligence in the care of streets and the like, as a common-law liability, not dependent upon express statutory declaration. Barnes v. District of Columbia, 91 U. S. 540, 551; Cleveland v. King, 132 U. S. 295, 303, 10 Sup. Ct. 90; Weightman v. Washington, 1 Black, 39, 52; 2 Dill., Mun. Corp., sec. 1017."

See, also, Kelly v. N. Y., N. H. & H. Ry. Co., 168 Mass. 308, 46 N. E. 1063, and Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890.

The court in the Webster Case, supra, indicates that contrary holdings in several early Wisconsin cases were either obiter or inadvertent. This doctrine has been followed in Guthrie v. Swan, 5 Okla. 779, 51 Pac. 562. The charter provision under inquiry neither accords the right to bring nor prevents the father from bringing suit, but only provides, in effect, that if 30 days expires without the notice having been given, no recovery shall be had. Could it be doubted that a suit brought before the expiration of the 30-day period by the father might be maintained? If so, it would seem logically to follow that the giving of the notice was no part of the essential elements of the right of action. The right of action was complete at the date of the injury, and, under the general statutes, a suit brought within two years could be maintained. Nonaction for two years in any event would bar the claim. If we give force to the charter provision, nonaction for 30 days after the injury would be, not only as complete a defense, but would be more comprehensive, in that it makes no allowance for infancy or other disability. In short, by its terms there could be no exceptions. How, then, can it be argued that this was not a limitation upon a civil action in contravention of the Constitution?

It might be urged that this is not a **pure** statute of limitations. Names mean nothing. A statute of limitations which destroys the power of enforcement of a right is as effective and deadly to the plaintiff and as beneficent to defendant as if both the right and the remedy were taken away. It is mincing words to say that an act which destroys a remedy which theretofore existed, or which destroys a right which theretofore existed, is not in every essential a limitation of that right; and the terms in which such legislation is couched mean little. It would seem to matter nothing whether the restrictive act were called a statute of limitations, a statute of repose, a conditional or qualified limitation, or a condition precedent, provided the effect of it was to destroy a right theretofore existing.

Section 59, art. 5, of the Constitution provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

This limitation is fully discussed in Board of Com'rs of Grady County et al. v. Hammerly, 85 Okla. 53, 204 Pac. 445, and it is held in subsection (a) of the syllabus that it is beyond the power of the Legislature to pass any special law where a general law can be enacted.

In City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, there was under consideration subsection (o) of the same article of the Constitution here in question and involving a home rule charter provision of that city, and the only question to be determined was whether said city, under its charter, might provide by ordinance for the assessment and collection of municipal taxes or special assessments in a manner inconsistent with the general laws of the state and conferring power upon the district courts to foreclose tax liens for the collection of such taxes. The charter provision was held invalid, and the court used the following language:

"Sections 46 and 46-o, article 5, of the Constitution of this state impose an express limitation upon the power of the Legislature to pass any special or local law regulating the practice or jurisdiction of any of the courts of this state. * * * This, for the reason the right to the redress of any wrong in the courts is a personal one unaffected by the place of residence. Ruan v. Street, 132 Pa. 257, 19 Atl. 219."

It was there held that the contention that cities operating under a freeholders' charter may determine what are purely municipal affairs, and once having determined the same, it became binding upon the state, is fallacious, and it was said that all such laws should be consistent with our fundamental principle of government. State ex rel. Muller v. Thompson, 149 Wis. 488, 137 N. W. 20; State ex rel. Webster v. Superior Court for King County et al. (Wash.) 120 Pac. 861.

The same general doctrine is announced in Diehl v. Crump, District Judge, 72 Okla. 108, 179 Pac. 4; also City of Beaumont v. Fall (Tex.) 291 S. W. 202.

While not involving the exact point, we think the general principle is supported in Walbridge-Aldinger Co. v. City of Tulsa, 107 Okla. 259, 233 Pac. 171; Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969.

We think the manner in which a litigant

may proceed against one of the scores of cities in this state for a breach of duty is not a matter of local concern only, but is, in its nature, of general public concern. It affects, or may affect, any resident of this state, or even the rights of those beyond the state.

It has been held that the manner of taking an appeal from a municipal court is not a matter of purely municipal concern. Jones, Co. Treas., v. Kennedy, 118 Okla. 224, 247 Pac. 53; Fossett v. State, 34 Okla. Cr. 106, 245 Pac. 668; Keefe v. People (Colo.) 87 Pac 791.

Upon principle and upon the authorities here cited, we conclude that this charter provision was in violation of the Constitution of this state and that plaintiff was not obliged thereunder to present his claim in conformity therewith. It is conceivable that cities stand in urgent need of the protection of a law similar in terms to the Tulsa charter provision. It is also conceivable that such law, properly enacted, might be held to be reasonable, for many cases have so held. It is not part of our duty to pass on that phase of the matter, for, as we see it, the constitutional inhibitions prevent special or local legislation of the kind here under inquiry.

It is finally urged that instruction No. 9, to the effect that one guilty of negligence is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact exist, etc. This language was used with approval in C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; C., R. I. & P. Ry. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794; Midland Valley R. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103; Producers Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9; Cushing Gasoline Co. v. Hutchins, 93 Okla. 13, 219 Pac. 408.

Finding no reversible error in the action of the trial court, the judgment is affirmed.

TEEHEE, FOSTER, HALL, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) anno. 50 L. R. A. (N. S.) 174; 19 R. C. L. p. 1044; R. C. L. Perm. Supp. p. 4751. See "Municipal Corporations," 43 C. J. §1755, p. 974, n. 44. "Statutes," 36 Cyc. p. 1014, n. 65.